# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

ELENA G. FINCH,
    Appellant,

   v.

OFFICE OF PERSONNEL
 MANAGEMENT,
    Agency.

DOCKET NUMBER
AT-0845-16-0722-I-1

DATE: July 14, 2022

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Elena G. Finch</u>, Lutz, Florida, pro se.

<u>Karla W. Yeakle</u>, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

## FINAL ORDER

¶1  The appellant has filed a petition for review of the initial decision, which affirmed the reconsideration decision of the Office of Personnel Management (OPM), finding that she received an overpayment of disability retirement benefits under the Federal Employees' Retirement System (FERS) in the amount of

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

$4,318.47. For the reasons set forth below, we GRANT the petition for review but still AFFIRM, as MODIFIED, the initial decision. Specifically, we MODIFY the initial decision to reduce the amount of the overpayment to $3,304.07, which accounts for the appellant's out-of-pocket payment of Federal Employees Health Benefits (FEHB) premiums during the overpayment period. We further MODIFY the initial decision to find that the set-aside rule does not apply to preclude waiver based on financial hardship but still find that the appellant is not entitled to waiver of the overpayment amount or to further adjustment of the repayment schedule.

## BACKGROUND

¶2    In January 2015, the appellant applied for a disability retirement annuity under FERS and entered leave without pay (LWOP) status pending a decision on her application. Initial Appeal File (IAF), Tab 9 at 42-44, 50-51. OPM approved her application and, by notice dated October 14, 2015, informed her that it had placed her in an interim payment status while it completed processing her application. *Id.* at 39, 60. OPM advised her that, if the total annuity due to her was less than the interim payments, it would make adjustments to balance her account and that, if she was overpaid, she would be "notified and offered the opportunity to respond before [OPM began] to withhold the excess from future annuity payments." *Id.* at 39.

¶3    In a letter dated March 16, 2016, OPM notified the appellant that her gross interim payments had exceeded the actual earned annuity payable to her from the date of her retirement and that she had received an overpayment of $4,318.47. *Id.* at 22-23. OPM further advised her that it would collect the overpayment through monthly deductions of $119.95 from her FERS annuity payments. *Id.* The appellant requested reconsideration of the existence and amount of the overpayment and a waiver of the overpayment collection. *Id.* at 14. In a June 30, 2016 reconsideration decision, OPM affirmed its initial decision regarding the

existence and amount of the overpayment and denied the appellant's request for a waiver but agreed to lower the monthly installments to $50.00, with a final installment of $18.47. *Id.* at 7-10.

¶4    The appellant filed this appeal of OPM's reconsideration decision to the Board, challenging the amount of the overpayment and requesting waiver of the overpayment collection or, in the alternative, a compromise on the amount owed. IAF, Tab 1 at 1-3, 8. In support of her challenge to the amount of the overpayment, the appellant argued that OPM should deduct from its overpayment calculation her October 2015 payment of $1,014 to the National Finance Center (NFC) for FEHB premiums not collected while she was in a nonpay status. *Id.* at 1, 3, 24-26. In an initial decision based on the written record, the administrative judge found that OPM established the amount of the overpayment by preponderant evidence, that the appellant did not establish that she was eligible for a waiver of the overpayment collection based on financial hardship or unconscionability, and that she did not show that she was eligible for a further adjustment of OPM's repayment schedule on the basis of financial hardship. IAF, Tab 17, Initial Decision (ID). Regarding the FEHB premium payment, the administrative judge deferred to OPM's assertion that the appellant must obtain reimbursement from NFC, not from OPM. ID at 3-4.

¶5    The appellant has filed a petition for review of the initial decision challenging these findings. Petition for Review (PFR) File, Tab 1 at 1-2.[2]

---

[2] The appellant has attached a number of documents to her petition for review that are already contained in the record. PFR File, Tab 1 at 6-22. In addition, she has submitted for the first time a November 16, 2016 letter informing her that her rent would be increased by $24 per month, beginning on December 30, 2016. *Id.* at 23. Because this letter was unavailable before the close of the record below, we will consider it for the first time on review. *See Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980) (stating that the Board generally will not consider evidence submitted for the first time with the petition for review absent a showing that it was unavailable before the record was closed despite the party's due diligence). The appellant also has filed a motion for leave to file additional pleadings. PFR File, Tab 5. In this motion, the appellant is seeking leave to submit additional evidence that, according to her, was

**ANALYSIS**

We modify the initial decision to find that OPM only proved that the appellant was overpaid $3,304.07, which accounts for her out-of-pocket payment of $1,014.40 in FEHB premiums.

¶6    OPM bears the burden of showing the existence and the amount of an annuity overpayment by a preponderance of the evidence.[3] *Vojas v. Office of Personnel Management*, 115 M.S.P.R. 502, ¶ 10 (2011); *see* 5 C.F.R. § 845.307(a).    In the initial decision, the administrative judge found that the calculations provided by OPM supported its determination that the appellant received an overpayment of $4,318.47.   ID at 3.   In addition, as noted above, he found that the appellant must seek reimbursement of her October 2015 FEHB premium payment from NFC, not from OPM, and that OPM need not deduct the payment from its overpayment calculation.   ID at 3-4.   In so finding, he relied on OPM's statement that "the appellant must request a letter from OPM for reimbursement from NFC for health insurance premiums that have been collected from her FERS [d]isability annuity.   The recovery of payments from NFC is between the appellant and NFC only."   ID at 4; IAF, Tab 9 at 5.   Thus, he concluded that OPM established the amount of the overpayment by the requisite preponderant evidence.   ID at 4.

¶7    On review, the appellant argues that she contacted NFC and was told that "they do not reimburse."   PFR File, Tab 1 at 2.   As such, she reiterates her

---

not readily available before the record closed and "adds proof to [her] pleadings."   *Id.*   Although the availability of the evidence she seeks to submit may postdate the close of the record and therefore may be considered new, she has failed to explain how the evidence is material and would warrant an outcome different from that of the initial decision.   *Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980); *Avansino*, 3 M.S.P.R. at 214.   Accordingly, the appellant's motion for leave to submit additional evidence is denied.

[3] A preponderance of the evidence is that degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue.   5 C.F.R. § 1201.4(q).

argument that her health insurance premium payment should be deducted from her overpayment. *Id.*

¶8    In its reconsideration decision, OPM found that it paid the appellant $16,475 in interim payments from January 11, 2015, through February 30, 2016,[4] but that it only should have paid her $12,156.53, resulting in an overpayment of $4,318.47. IAF, Tab 9 at 8. In calculating the amount the appellant was overpaid, OPM included $1,908.69 in FEHB premiums that it paid on the appellant's behalf. *Id.*

¶9    The record reflects, however, that the appellant paid FEHB premiums out-of-pocket for part of that same time period. IAF, Tab 1 at 24-26. Specifically, on October 19, 2015, she submitted a check in the amount of $1,014.40 to NFC in response to its October 1, 2015 letter demanding payment of past-due FEHB premiums, which were not collected while she was in a nonpay status from pay period 2 through pay period 17, i.e., January through August 2015. *Id.* OPM does not dispute that the appellant paid her own FEHB premiums for this period but simply avers, without citation to any authority, that the appellant must seek reimbursement from NFC. IAF, Tab 9 at 5.

¶10   We disagree with OPM's assertion, on which the administrative judge relied, that the appellant must seek reimbursement of her out-of-pocket FEHB premium payment from NFC and that her FEHB premium payment in October 2015 is irrelevant to OPM's overpayment calculation. To the contrary, the Board previously has held that OPM must reduce the amount of the overpayment to account for the employee's out-of-pocket payment of FEHB premiums during the overpayment period. *Deutsch v. Office of Personnel Management*, 93 M.S.P.R. 261, ¶¶ 4-7 (2003). Therefore, we modify the initial decision to find that OPM failed to establish by preponderant evidence that its overpayment calculation is correct. We find instead that the appellant's actual

---

[4] OPM's reference to "February 30, 2016" is inaccurate, as February does not have 30 days. February 29th was the last day of February in 2016.

overpayment is $3,304.07, which accounts for her out-of-pocket payment of $1,014.40 in FEHB premiums during the overpayment period.

<u>We modify the initial decision to find that the set-aside rule does not apply to the appellant but find that she has not proven her entitlement to a waiver based on financial hardship.</u>

¶11     An appellant seeking waiver of an overpayment bears the burden of establishing her entitlement to such a waiver by substantial evidence.[5]  5 C.F.R. § 845.307(b).  OPM may waive collection of an annuity overpayment when the annuitant is without fault and recovery would be against equity and good conscience.  5 U.S.C. § 8470(b); *Zucker v. Office of Personnel Management*, 114 M.S.P.R. 288, ¶ 7 (2010).  Here, it is undisputed that the appellant was not at fault in creating the overpayment.  IAF, Tab 9 at 10.  The administrative judge found, however, that the appellant was not entitled to waiver because she did not show that recovery of the overpayment would be against equity and good conscience.  ID at 4-7.

¶12     Generally, recovery of an overpayment is against equity and good conscience when any of the following conditions are met:  (a) recovery would cause the annuitant financial hardship; (b) the annuitant can show that, due to the notice that such payment would be made or because of the incorrect payment, she either has relinquished a valuable right or has changed positions for the worse; or (c) recovery would be unconscionable under the circumstances.  5 C.F.R. § 845.303; *see Zucker*, 114 M.S.P.R. 288, ¶ 7.  When an annuitant knew or suspected that she was receiving an overpayment, however, OPM's set-aside rule applies, and the annuitant is expected to set aside the overpaid money pending recovery by OPM.  *See Boyd v. Office of Personnel Management*, 851 F.3d 1309, 1313 (Fed. Cir. 2017) (quoting OPM's *Policy Guidelines on the Disposition of*

---

[5] Substantial evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree.  5 C.F.R. § 1201.4(p).

*Overpayments under the Civil Service Retirement System and the Federal Employees' Retirement System* (*Policy Guidelines*) § I.C.4 (1995)).  In such a case, recovery of the overpayment will not be waived absent "exceptional circumstances."  *Id.*  Financial hardship is not an "exceptional circumstance" under the set-aside rule.  *Id.*

¶13     The administrative judge found that the set-aside rule applied to the appellant because OPM informed her that the interim payments were an estimate and that she would have to repay the difference to OPM if she received more in interim payments than her actual annuity.  ID at 6.  Thus, he did not consider whether the appellant is entitled to waiver based on financial hardship.  *Id.*  On review, the appellant argues that OPM never told her that she needed to set aside any money for overpayment and, to the contrary, informed her that her interim payments would be less than her actual annuity to ensure that she would not be overpaid.  PFR File, Tab 1 at 2.

¶14     While we agree with the administrative judge's finding that OPM's October 14, 2015 interim pay letter placed the appellant on notice of the fact that her interim payments were only an estimate and that adjustment would be necessary in the event of an overpayment or underpayment, IAF, Tab 9 at 39, we find no basis to conclude that the appellant knew or suspected that she was receiving an overpayment so as to implicate OPM's set-aside rule, *see Policy Guidelines* § I.C.4.  The U.S. Court of Appeals for the Federal Circuit has emphasized that "[t]he set-aside rule does not apply to individuals who do not know or suspect they are being overpaid.  Those individuals do not know that the money does not belong to them, and may act in good faith when they fail to set aside the overpayments."  *Boyd*, 851 F.3d at 1315; *see Okonski v. Office of Personnel Management*, 63 M.S.P.R. 446, 453 (1994) (finding that the appellant could not reasonably have been expected to set aside money if he did not have a reason to know that it was an overpayment).  As such, "[t]o place unknowing individuals in the same position as knowing individuals is an unreasonable

interpretation of the guidelines, as it renders the language requiring knowledge superfluous." *Boyd*, 851 F.3d at 1315; *see Policy Guidelines* § I.C.4 (stating that "[i]ndividuals who are aware that they are receiving overpayments are obligated by the principles of equity and good conscience to set aside the amount overpaid pending recoupment by OPM" and that "an individual who accepted a payment which he/she suspected or knew to be erroneous . . . is obliged to set the overpaid money aside").

¶15        Here, OPM's interim payment notice specifically advised the appellant that, although any overpayment would be deducted from future annuity payments, her interim payments "should be less than her actual earned annuity" in order to avoid an overpayment. IAF, Tab 9 at 39. Moreover, there is no indication that the appellant knew or suspected that she was receiving an overpayment at any time prior to March 16, 2016, when OPM notified her of the overpayment and provided her the calculations relevant to her annuity. *Id.* at 22. In addition, according to OPM's reconsideration decision, the appellant received over $1,200 gross each month in interim payments for the first year while she was entitled to only $1,058 each month before her health benefits and life insurance premiums were taken out. *Id.* at 9. We find that a difference of $142 per month is not so substantial that the appellant may be assumed to have known or suspected that her interim payments were erroneous. *See Policy Guidelines* § I.C.4. Thus, we find that the appellant reasonably assumed that she would not receive an overpayment. IAF, Tab 1 at 1.

¶16        We further note that OPM did not argue below that the set-aside rule should be applied in the instant case. IAF, Tab 9 at 4-6. Rather, OPM discussed the set-aside rule only in connection with the appellant's application for Social Security benefits, stating that it had notified the appellant that, if she received an award of Social Security benefits, she must set aside any payments in anticipation of a request for recovery of the FERS overpayment. *Id.* at 4-5. It is undisputed, however, that the Social Security Administration denied the appellant's

application for Social Security benefits and that the overpayment at issue did not result from a payment of such benefit. *Id.* at 5, 28, 38. In addition, in its reconsideration decision, OPM denied the appellant's request for waiver based on financial hardship because she did not prove that she was unable to repay the overpayment, not because of the set-aside rule. *Id.* at 10.

¶17 In light of the foregoing, we find that the appellant did not know or suspect that she was receiving an overpayment during the overpayment period and that the set-aside rule does not apply in this case. Therefore, financial hardship can serve as a basis for finding that recovery is against equity and good conscience. *See Boyd*, 851 F.3d at 1315; 5 C.F.R. § 831.1403(a)(1).

¶18 To show financial hardship, the annuitant must show that she "needs substantially all of [her] current income and liquid assets to meet current ordinary and necessary living expenses and liabilities." 5 C.F.R. § 845.304; *Policy Guidelines* § I.D.1. According to OPM's *Policy Guidelines*, "[a] debtor shall generally be deemed to need 'substantially' all of [her] current income to meet current ordinary and necessary expenses if [her] monthly income does not exceed monthly expenses by more than approximately $50 after including repayment of the overpayment as an expense." *Policy Guidelines* § I.D.9. Therefore, to determine an annuitant's total monthly expenses, $50 of "emergency expenses" must be added to the annuitant's ordinary and necessary monthly expenses. *Id.*; *see Davis v. Office of Personnel Management*, 109 M.S.P.R. 48, ¶ 12 (2008). The total monthly expense figure is then subtracted from total monthly income to ascertain the annuitant's income/expense margin. *Davis*, 109 M.S.P.R. 48, ¶ 12. Even when an annuitant has a zero or negative monthly income/expense margin, a financial hardship finding may not be warranted depending on the amount of available liquid assets.[6] *Policy Guidelines* § I.D.9.

---

[6] A liquid asset is defined as cash or an asset that is readily convertible to cash with little or no loss of value, such as a checking or savings account. *Policy Guidelines* § I.D.6.

¶19     Here, the appellant submitted a Financial Resources Questionnaire (FRQ), dated October 31, 2016, reflecting a monthly income of $2,071.42 and monthly expenses in the amount of $1,931.  IAF, Tab 15 at 4-6.  As noted above, she has submitted a November 16, 2016 notice informing her that her rent would increase from $784 per month to $808 per month, effective December 30, 2016.  PFR File, Tab 1 at 23.  Therefore, her total monthly expenses now amount to $1,955.  Allowing for $50 in emergency expenses per OPM guidelines, the reported figures yield an income/expense margin of $66.42 per month, providing the appellant a surplus of $16.42 after paying the $50 monthly installment towards her overpayment.

¶20     The appellant also reported on her FRQ that she has $63,000 in a checking account.  IAF, Tab 15 at 5.  She argues on review, however, that this amount is from past due child support for her two children, who are now adults, and that it is all she has towards her retirement.  PFR File, Tab 1 at 3.  Thus, she appears to contend that this liquid asset should not be considered in determining whether recovery of the overpayment would cause her financial hardship.  *Id.*  As a general rule, nonliquid assets and the first $5,000 in liquid assets should be considered unavailable for recovery of an overpayment.  *Davis*, 109 M.S.P.R. 48, ¶ 12; *Policy Guidelines* § I.D.8.  The *Policy Guidelines* allow that it may be appropriate to exclude more than $5,000 of liquid assets from consideration for debt repayment if the annuitant's expenses exceed her income or if she has significant current liabilities that are not reflected in the expenses.  *Policy Guidelines* § I.D.8.  Here, the appellant's expenses do not exceed her income, and she has not alleged that she has current significant liabilities that are not reflected in her expenses.  Therefore, we conclude that $58,000 of the appellant's checking account (i.e., $63,000 minus $5,000) constitutes available liquid assets that may properly be considered in determining her total financial condition.  *See Maples v. Office of Personnel Management*, 48 M.S.P.R. 572, 577 (1991).

¶21      Under these circumstances, we find that the appellant has not demonstrated that recovery of the $3,304.07 overpayment will cause her financial hardship and, therefore, find that she is not entitled to waiver of the overpayment collection based on financial hardship.  *See* 5 C.F.R. § 845.304; *cf. Hudson v. Office of Personnel Management*, 87 M.S.P.R. 385, ¶ 12 (2000) (finding that an annuitant showed that recovery of annuity overpayment would be a financial hardship, and thus against equity and good conscience, when he had no liquid assets, and his monthly living expenses exceeded his monthly income by approximately $290); *Tatum v. Office of Personnel Management*, 82 M.S.P.R. 96, ¶ 21 (1999) (stating that an annuitant was entitled to waiver of recovery of annuity overpayment based on financial hardship when her monthly living expenses exceeded her monthly income by approximately $443).

The administrative judge correctly determined that the appellant is not entitled to waiver based on unconscionability.

¶22      As noted above, an annuitant also may be entitled to waiver if she shows that she detrimentally relied on the overpayment or that recovery of the overpayment would be unconscionable under the circumstances.  5 C.F.R. § 845.303; *see Zucker*, 114 M.S.P.R. 288, ¶ 7.  The appellant has not alleged that she detrimentally relied on the overpayment but has argued that recovery would be unconscionable under the circumstances because OPM caused the overpayment and failed to remedy the situation in a timely manner.  IAF, Tab 1 at 2, Tab 4 at 2.  The administrative judge found that the appellant failed to prove that she was entitled to waiver based on unconscionability because OPM's delay of less than 8 months in finalizing her annuity computation and delay of 3 months in adjudicating her reconsideration request were not unreasonable.  ID at 7.  The administrative judge also noted that the appellant did not raise her age or physical or mental condition in asserting unconscionability.  *Id.*  On review, the appellant argues that OPM's delay was actually 16 months and that she did raise her age (61 years old) and a physical disability.  PFR File, Tab 1 at 2.

¶23   The standard for unconscionability is a high one and is granted only under exceptional circumstances. *Taylor v. Office of Personnel Management*, 87 M.S.P.R. 214, ¶ 18 (2000). In assessing unconscionability, the Board considers all relevant factors under a totality-of-the-circumstances approach. *Vojas*, 115 M.S.P.R. 502, ¶ 22. Such circumstances may include, but are not limited to, cases in which: (1) OPM delayed an exceptionally long time to adjust an annuity; (2) OPM failed to respond within a reasonable length of time to an annuitant's inquiries regarding an overpayment; (3) OPM failed to act expeditiously to adjust an annuity in the face of the specific notice; or (4) OPM was otherwise grossly negligent in handling the case. *Id.* The Board also will consider an annuitant's personal limitations, such as lack of education, physical or mental disability, or other factors that would make the collection of an overpayment manifestly unfair. *Aguon v. Office of Personnel Management*, 42 M.S.P.R. 540, 550 (1989). In addition, in determining whether recovery of a debt would be unconscionable under the circumstances, the Board may consider whether collection of the overpayment would have a negative impact on an annuitant because of her medical conditions or whether those medical conditions require expenditure of a portion of the installment amount. *Boone v. Office of Personnel Management*, 119 M.S.P.R. 53, ¶ 9 (2012).

¶24   Here, the appellant applied for disability retirement under FERS in January 2015, and OPM notified her that it had approved her application on August 5, 2015. IAF, Tab 9 at 42-44, 60. On October 14, 2015, OPM advised the appellant that she had been placed in an interim payment status while it finished processing her application. *Id.* at 39. On March 16, 2016, OPM notified the appellant that she had received an overpayment in the amount of $4,318.47 and provided her a repayment schedule. *Id.* at 22-23. The appellant requested reconsideration on April 2, 2016, and OPM issued a reconsideration decision on June 30, 2016. Thus, the entire process took approximately 18 months. The Board has held that substantially longer delays, without more, do not render

recovery unconscionable.  *See, e.g.*, *Spinella v. Office of Personnel Management*, 109 M.S.P.R. 185, ¶¶ 7-10 (2008) (finding that OPM's delay of 79 months to adjust the appellant's annuity did not render recovery of the overpayment unconscionable); *Newcomb v. Office of Personnel Management*, 42 M.S.P.R. 552, 558‑59 (1989) (determining that OPM's delay of 3 years and 10 months to render a decision on an annuitant's request for waiver did not render recovery of the overpayment unconscionable).

¶25    In addition, the appellant is approximately 61 years old and has a left shoulder impingement.  IAF, Tab 4 at 2, 4.  She has not shown, however, that repayment of the monthly installment of $50 would have any negative impact on her because of her age or medical condition and has not shown that her medical condition requires expenditure of any of the installment amount.  *See Boone*, 119 M.S.P.R. 53, ¶ 9; *Dixon v. Office of Personnel Management*, 63 M.S.P.R. 607, 610-11 (1994) (finding that recovery of an $8,994 overpayment was not unconscionable because, among other things, the annuitant failed to show that repayment in monthly installments of $149.90 would have any negative impact on him because of his advanced age of 85 years, numerous medical conditions, or low education level).

¶26    In light of the foregoing, we find that there has been no excessive delay or other egregious conduct on OPM's part and that the appellant's age and left shoulder impingement do not warrant waiver of the overpayment based on unconscionability.  Therefore, we do not disturb the administrative judge's determination that the appellant is not entitled to waiver of the overpayment based on unconscionability.

The administrative judge correctly determined that the appellant is not entitled to further adjustment of the repayment schedule.

¶27    An annuitant who is ineligible for a waiver may nonetheless be entitled to an adjustment in the recovery schedule if she shows that it would cause her financial hardship to make payment at the rate scheduled.  *Maseuli v. Office of*

*Personnel Management*, 111 M.S.P.R. 439, ¶ 10 (2009); 5 C.F.R. § 845.301. As discussed above, a financial hardship exists, for the purpose of determining whether waiver is warranted, when the debtor needs substantially all of her current income and liquid assets to meet current ordinary and necessary living expenses. 5 C.F.R. § 845.304; *Policy Guidelines* § I.D.1. In determining whether an individual is entitled to an adjustment of the repayment schedule based on financial hardship, the standard is ordinarily not applied as strictly as it is in determining entitlement to waiver. *Wagner v. Office of Personnel Management*, 83 M.S.P.R. 355, ¶ 6 (1999).

¶28      In its reconsideration decision, OPM agreed to reduce the appellant's monthly installment from $119.95 to $50. IAF, Tab 9 at 10. The administrative judge found that the appellant was not eligible for further adjustment of OPM's repayment schedule because a monthly installment of $50 did not exceed her demonstrated monthly income/expense margin. ID at 9. As discussed above, the appellant has since experienced a rent increase, but her reported monthly expenses, including the monthly installment of $50, still do not exceed her monthly income, and she has $58,000 in a checking account that is considered available for repayment of the debt. PFR File, Tab 1 at 23. Therefore, we find no basis to disturb the administrative judge's determination that the appellant is not entitled to further adjustment of the repayment schedule based on financial hardship.[7]

---

[7]Our decision in this matter does not preclude the appellant from exercising any right that she may have to make a mid-collection request to OPM for modification of the repayment schedule, compromise, suspension, or write-off, as provided for under any applicable law, rule, regulation, or OPM guideline. *See* 5 C.F.R. § 845.301; *see also Hundley v. Office of Personnel Management*, 83 M.S.P.R. 632, ¶ 16 (1999) (finding that any effects of a future medical emergency could be addressed by a mid-collection request to OPM for lower payments, compromise, suspension, or write-off).

**ORDER**

¶29      We ORDER OPM to modify the amount of the appellant's assessed overpayment to $3,304.07.[8]  OPM must complete this action no later than 20 days after the date of this decision.

¶30      We also ORDER OPM to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order.  We ORDER the appellant to provide all necessary information OPM requests to help it carry out the Board's Order.  The appellant, if not notified, should ask OPM about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶31      No later than 30 days after OPM tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that OPM did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that OPM has not fully carried out the Board's Order, and should include the dates and results of any communications with OPM.  5 C.F.R. § 1201.182(a).

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

¶32      You may be entitled to be paid by OPM for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If

---

[8]OPM has advised the Board that it may seek recovery of any debt remaining upon an appellant's death from the appellant's estate or other responsible party.  A party responsible for any debt remaining upon the appellant's death may include an heir (spouse, child, or other) who is deriving a benefit from the appellant's Federal benefits, an heir or other person acting as the representative of the estate if, for example, the representative fails to pay the United States before paying the claims of other creditors in accordance with 31 U.S.C. § 3713(b), or transferees or distributers of the appellant's estate.  *Pierotti v. Office of Personnel Management*, 124 M.S.P.R. 103, ¶ 13 (2016).

you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[9]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court

---

[9]Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before

you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court‑appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[10]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[10]The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                    /s/ for

                                  Jennifer Everling
                                  Acting Clerk of the Board
Washington, D.C.