UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| MURPHY CONSOLIDATION 2,<br>            Appellant, | DOCKET NUMBER<br>DA-0841-16-0524-I-1 |
|                    v. | |
| OFFICE OF PERSONNEL<br>    MANAGEMENT,<br>            Agency. | DATE: March 29, 2023 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

David L. Murphy, Rockwall, Texas, for the appellants.

Jane Bancroft, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member[2]

## FINAL ORDER

¶1      The appellants have filed petitions for review of the initial decision, which affirmed final decisions by the Office of Personnel Management (OPM) finding

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

[2] Member Leavitt's name is included in decisions on which the three-member Board completed the voting process prior to his March 1, 2023 departure.

that they jointly received an overpayment of benefits under the Federal Employees' Retirement System (FERS). Generally, we grant petitions such as these only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in these appeals, we conclude that the petitioners have not established any basis under section 1201.115 for granting the petitions for review. Therefore, we DENY the petitions for review and AFFIRM the initial decision, except as MODIFIED to address the appellants' argument that OPM should recover the overpayment from their bank.

## BACKGROUND

¶2    In final decisions dated July 25, 2016, OPM found that the appellants, FERS annuitants David Murphy and Karen Dahlstrom, jointly received an overpayment of $5,486.65 in annuity benefits when OPM erroneously authorized and deposited nine annuity payments intended for another FERS annuitant into their joint bank account between May 2013 and February 2014. *Murphy Consolidation 2 v. Office of Personnel Management*, MSPB Docket No. DA-0841-16-0524-I-1, Consolidation Appeal File (CAF), Tab 3 at 5-7, Tab 4 at 5-7. OPM indicated that the appellants' financial institution returned $2,800 to OPM, leaving a joint overpayment balance of $2,686.65.[3] CAF, Tab 3 at 6-7, Tab

---

[3] According to OPM, it contacted the appellants' bank regarding the misdirected funds, and a bank representative informed OPM that an authorized account holder had

4 at 6-7. OPM also noted that, from August to November 2014, it administratively offset each of the appellants' monthly annuity payments to recover $1,343.32 from each of them but that, on June 15, 2016, it refunded to them the recovered amounts because they had not received due process prior to the administrative offset.[4] CAF, Tab 3 at 6, Tab 4 at 6. Thus, OPM found that the appellants still had a joint overpayment balance of $2,686.65 and proposed to collect $1,343.32 from Ms. Dahlstrom's annuity in 13 monthly installments of $100.00 and a final installment of $43.32 and $1,343.33 from Mr. Murphy's

---

removed the funds from the appellants' account. CAF, Tab 3 at 6, Tab 4 at 6. In a letter dated June 30, 2014, OPM asked the bank to withhold $2,800 from a deposit being made to Mr. Murphy's account on July 1, 2014, and indicated that OPM held "the bank harmless of any liability." CAF, Tab 3 at 8, Tab 4 at 12. According to OPM, the bank "returned $2,800.00 to OPM per [Department of the] Treasury regulations." CAF, Tab 3 at 6, Tab 4 at 6.

[4] Prior to issuing the July 25, 2016 final decisions at issue in this appeal, OPM issued undated final decisions advising the appellants that they had received a joint overpayment of $5,486.64, that their financial institution had returned $2,800 of the overpayment, and that OPM had collected the remaining balance of the overpayment from their annuities through administrative offset. *Murphy v. Office of Personnel Management*, MSPB Docket No. DA-0841-16-0345-I-1, Initial Appeal File, Tab 1 at 6-9; *Dahlstrom v. Office of Personnel Management*, MSPB Docket No. DA-0841-16-0346-I-1, Initial Appeal File, Tab 1 at 6-9. The appellants appealed OPM's decisions to the Board, and the administrative judge consolidated the appeals. *Murphy Consolidation v. Office of Personnel Management*, MSPB Docket No. DA-0841-16-0353-I-1, Consolidation Appeal File (0353 CAF), Tab 1. OPM subsequently notified the administrative judge that it had rescinded the final decisions and moved that the appeals be dismissed for lack of jurisdiction. 0353 CAF, Tab 7 at 4. The administrative judge found, however, that OPM had not yet refunded to the appellants the amounts collected through administrative offset and, therefore, that it had not completely rescinded the final decisions. 0353 CAF, Tab 8, Initial Decision at 2. She dismissed the appeals without prejudice for 60 days to allow OPM the opportunity to refund the aforementioned funds to the appellants. *Id.* at 2-3. Following automatic refiling of the appeals, the administrative judge issued an initial decision dated September 7, 2016, finding that OPM had completely rescinded the undated decisions at issue, and dismissed the appeals for lack of jurisdiction. *Murphy Consolidation v. Office of Personnel Management*, MSPB Docket No. DA-0841-16-0353-I-2, Appeal File, Tab 1, Tab 6, Initial Decision. The appellants did not file a petition for review of the initial decision dismissing those appeals for lack of jurisdiction.

annuity in 13 monthly installments of $100.00 and a final installment of $43.33. CAF, Tab 3 at 6-7, Tab 4 at 6-7.

¶3     The appellants appealed OPM's final decisions, and the administrative judge consolidated the appeals for adjudication. *Dahlstrom v. Office of Personnel Management*, MSPB Docket No. DA-0841-16-0522-I-1, Initial Appeal File, Tab 1; *Murphy v. Office of Personnel Management*, MSPB Docket No. DA-0841-16-0523-I-1, Initial Appeal File, Tab 1; CAF, Tab 1.   After holding their requested hearing, the administrative judge issued an initial decision finding that OPM established by preponderant evidence that it issued to the appellants' joint bank account $5,486.65 from the Civil Service Retirement Fund, to which they were not entitled.   CAF, Tab 21, Initial Decision (ID) at 2-4.   She further found that the appellants failed to prove their affirmative defense of whistleblower reprisal and failed to establish that they were entitled to waiver of the overpayment or adjustment of the repayment schedule.  ID at 4-7.   Accordingly, she affirmed OPM's July 25, 2016 final decisions.  ID at 8.

¶4     The appellants have filed petitions for review challenging the administrative judge's findings and arguing that they did not receive a fair hearing, that OPM violated their constitutional rights and failed to follow correct procedures by taking the administrative offset action, and that OPM should collect the overpayment from the bank.  *Dahlstrom v. Office of Personnel Management*, MSPB Docket No. DA-0841-16-0522-I-1, Petition for Review (0522 PFR) File, Tab 1 at 3-9; *Murphy v. Office of Personnel Management*, MSPB Docket No. DA-0841-16-0523-I-1, Petition for Review (0523 PFR) File, Tab 1 at 3-8.  The agency has responded in opposition to their petitions for review.[5]  *Murphy*

---

[5] In December 2017, while his petition for review was pending before the Board, OPM submitted an additional pleading and evidence showing that it had erroneously collected 14 installments of $43.33 and 13 installments of $56.67 from Mr. Murphy's annuity but that it had refunded the total amount collected of $1,343.33 on December 14, 2017. 0523 PFR File, Tab 2.  Because the submission was unavailable before the record closed below, we have accepted it into the record on review.  *See Avansino v. U.S.*

*Consolidation 2 v. Office of Personnel Management*, MSPB Docket No. DA-0841-16-0524-I-1, Petition for Review File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The administrative judge correctly found that OPM proved the existence and amount of the overpayment.</u>

¶5    OPM bears the burden of showing the existence and the amount of an annuity overpayment by a preponderance of the evidence.[6] *Vojas v. Office of Personnel Management*, 115 M.S.P.R. 502, ¶ 10 (2011); *see* 5 C.F.R. § 845.307(a).    The administrative judge found that OPM met this burden by showing that it issued nine payments between May 2013 and February 2014, intended for another annuitant, totaling $5,486.65 to the bank account in which the appellants receive their annuity payments.    ID at 3-4.    The administrative judge further found that OPM submitted preponderant evidence showing that it paid the appellants their regular annuity payments during that period.    ID at 4.

¶6    On review, the appellants do not challenge the administrative judge's determination that OPM established that it deposited nine annuity payments totaling $5,486.65 into their joint account between May 2013 and February 2014, in addition to their regular annuities.    0522 PFR File, Tab 1 at 3-9; 0523 PFR File, Tab 1 at 3-8.    We have reviewed the record and agree with the administrative judge that OPM provided preponderant evidence showing that nine payments intended for another annuitant, in a total amount of $5,486.65, were directly deposited into the checking account in which the appellants received their annuity payments.    CAF, Tab 3 at 15, Tab 4 at 12, Tab 16 at 4-15.    We further agree with the administrative judge that OPM established by preponderant

*Postal Service*, 3 M.S.P.R. 211, 214 (1980) (providing that the Board will not consider evidence submitted for the first time with the petition for review absent a showing that it was unavailable before the record was closed despite the party's due diligence).

[6] A preponderance of the evidence is that degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue.    5 C.F.R. § 1201.4(q).

evidence that the appellants received their regular annuity payments during that timeframe.  CAF, Tab 16 at 18-25, 29-31, 33-41, 45-46.  Therefore, we find no basis to disturb the administrative judge's finding that OPM proved the existence and amount of the overpayment by preponderant evidence.  ID at 4.

¶7        The appellants argue, however, that the administrative judge erred in rejecting their argument that a "misdirected payment" does not constitute an "overpayment" and in finding that the appellants received an "overpayment" because OPM's records prove that they never received an "increase in benefits (which would indicate an 'overpayment')."  0522 PFR File, Tab 1 at 5-7; 0523 PFR File, Tab 1 at 5-7.  We agree with the administrative judge that these arguments are unavailing.  An overpayment debt under FERS occurs when an individual is paid benefits from the Civil Service Retirement Fund in the absence of entitlement or in excess of the amount to which that individual is properly entitled.  *See* 5 C.F.R. §§ 845.102, 845.202, 845.203.  Here, the appellants received benefits from the Civil Service Retirement Fund to which they were not entitled when OPM erroneously deposited annuity payments owed to another annuitant into their joint bank account.  Consequently, they received an "overpayment" under FERS, and their arguments on review provide no basis to disturb the initial decision.

The administrative judge correctly found that the appellants failed to prove their whistleblower reprisal affirmative defense.

¶8        The administrative judge denied the appellants' whistleblower reprisal affirmative defense, finding that they were not employees or applicants for employment protected from whistleblower retaliation by 5 U.S.C. §§ 2302(b)(8) and 2302(b)(9), and they failed to establish by preponderant evidence that they made any protected disclosures.  ID at 5.  On review, the appellants argue that they are covered by Federal whistleblower protections because they are former employees and that they made a protected disclosure of gross mismanagement when they disclosed to various entities that OPM "seized funds [] without due

process and in violation of regulations from appellant's annuity." 0522 PFR File, Tab 1 at 6-7; 0523 PFR File, Tab 1 at 6-7.

¶9        Under the Whistleblower Protection Act of 1989 (WPA), as amended by the Whistleblower Protection Enhancement Act of 2012 (WPEA), "an employee, former employee, or applicant for employment" may seek corrective action from the Board "with respect to any personnel action taken, or proposed to be taken, against such employee, former employee, or applicant for employment, as a result of a prohibited personnel practice described in section 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D)." 5 U.S.C. § 1221(a); *Hooker v. Department of Veterans Affairs*, 120 M.S.P.R. 629, ¶ 9 (2014); *see Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶¶ 12-13 (2015) (discussing the parties' burdens when whistleblower reprisal is raised as an affirmative defense).[7] Although former employees are included among those who can seek corrective action from the Board, they cannot do so for matters occurring after their employment. *See Nasuti v. Merit Systems Protection Board*, 376 F. App'x 29, 33-34 (Fed. Cir. 2010); *Guzman v. Office of Personnel Management*, 53 F. App'x 927, 929 (Fed. Cir. 2002)[8]; *see Weed v. Social Security Administration*, 113 M.S.P.R. 221, ¶ 11 (2010) (citing this principle from *Guzman* with approval).[9] Section 2302(b)(8) prohibits any employee in a position of authority from taking, failing to take, or threatening to take "a personnel action *with*

_____

[7] While the appellants did not file an individual right of action appeal, in an appeal of an otherwise appealable action, such as this, an appellant's claim of whistleblower reprisal is treated as an affirmative defense.

[8] The Board may follow a nonprecedential decision of the U.S. Court of Appeals for the Federal Circuit when, as here, it finds its reasoning persuasive. *LeMaster v. Department of Veterans Affairs*, 123 M.S.P.R. 453, ¶ 11 n.5 (2016).

[9] We recognize that these cases were decided before the WPEA's November 27, 2012 enactment but find that they are applicable to our analysis here because the WPEA did not alter the requirement that a challenged personnel action concern an employee or applicant for employment, but not a former employee. *See* WPEA, Pub. L. No. 112-199, 126 Stat. 1465.

8

*respect to any employee or applicant for employment*" because of a protected disclosure of information "*by an employee or applicant.*" 5 U.S.C. § 2302(b)(8) (emphasis added). Section 2302(b)(9) similarly prohibits personnel actions taken "*against any employee or applicant for employment*" because of certain classes of protected activity. 5 U.S.C. § 2302(b)(9) (emphasis added). Therefore, the WPA, as amended by the WPEA, does not cover "a claim brought by a former employee complaining of agency action taken after the termination of employment in response to a disclosure that was also made after the termination of his employment." *Nasuti*, 376 F. App'x at 34.

¶10    Here, the record reflects that Mr. Murphy retired from Federal employment in 2012 and that Ms. Dahlstrom retired from Federal employment in 2009. CAF, Tab 3 at 19, Tab 4 at 16. In addition, the alleged protected disclosures all occurred in 2014, after they both retired. CAF, Tab 20 at 2-45. Therefore, as the administrative judge correctly determined, the appellants failed to establish an affirmative defense of whistleblower reprisal because they cannot show that they were employees or applicants for employment at the time of the alleged disclosures or the alleged retaliation.[10] ID at 5. The appellants' arguments on review provide no basis to disturb this finding.[11]

---

[10] The National Defense Authorization Act for Fiscal Year 2018 (NDAA for 2018), Pub L. No. 115-91, 131 Stat. 1283, was signed into law on December 12, 2017. The NDAA for 2018 amended 5 U.S.C. § 2302(f)(1) to provide that a disclosure shall not be excluded from protection under 5 U.S.C. § 2302(b)(8) because it was made before the individual's appointment or application for employment. NDAA for 2018, § 1097(c)(1)(B)(i), 131 Stat. at 1618 (codified at 5 U.S.C. § 2302(f)(1)(F)). This provision does not affect the analysis of the whistleblower reprisal claim in this appeal, as both the alleged protected disclosures and the agency's alleged retaliatory acts occurred *after* the appellants' employment had ended.

[11] The administrative judge alternatively found that the alleged disclosures were not protected. However, Mr. Murphy alleged that he made, and threatened to make, disclosures to OPM's Office of Inspector General, which might be protected activities regardless of the content of the information disclosed. ID at 5; 5 U.S.C. § 2302(b)(9)(C). In light of our finding here, we vacate the administrative judge's alternative finding.

<u>The administrative judge correctly determined that the appellants are not entitled to waiver of the overpayment or to adjustment of the repayment schedule.</u>

¶11      Appellants seeking waiver of an overpayment bear the burden of establishing their entitlement to such a waiver by substantial evidence.[12] 5 C.F.R. § 845.307(b). OPM may waive collecting an annuity overpayment when the annuitants are without fault and recovery would be against equity and good conscience. 5 U.S.C. § 8470(b); *Zucker v. Office of Personnel Management*, 114 M.S.P.R. 288, ¶ 7 (2010). Generally, recovery of an overpayment is against equity and good conscience when any of the following conditions are met: (a) recovery would cause the annuitants financial hardship; (b) the annuitants can show that, due to the notice that such payment would be made or because of the incorrect payment, they either have relinquished a valuable right or have changed positions for the worse; or (c) recovery would be unconscionable under the circumstances. 5 C.F.R. § 845.303; *see Zucker*, 114 M.S.P.R. 288, ¶ 7. When the annuitants knew or suspected that they were receiving an overpayment, however, OPM's set-aside rule applies, and the annuitants are expected to set aside the overpaid money pending recovery by OPM. *See Boyd v. Office of Personnel Management*, 851 F.3d 1309, 1313 (Fed. Cir. 2017). In such a case, recovery of the overpayment will not be waived absent "exceptional circumstances." *Id.* at 1313-14.

¶12      Here, the administrative judge found that the appellants were not at fault in creating the overpayment but that they were not entitled to waiver because they did not show that recovery of the overpayment would be against equity and good conscience. ID at 6-7. Specifically, she found that the appellants knew or suspected that they were receiving an overpayment and that they therefore were expected to set aside the amount overpaid pending recoupment by OPM. ID at 6.

---

[12] Substantial evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree. 5 C.F.R. § 1201.4(p).

Moreover, she found that they failed to provide any evidence showing that recovery of the overpayment would cause them financial hardship. ID at 6-7. On review, the appellants argue that the administrative judge erred in finding that they were not entitled to waiver of the overpayment because it "would be against 'equity and good conscience' to collect from annuity accounts that had never received an overpayment." 0522 PFR File, Tab 1 at 6; 0523 PFR File, Tab 1 at 5.

¶13    As discussed above, the appellants' contention that they "never received an overpayment" is unpersuasive. Therefore, their argument on review provides no basis to disturb the initial decision. In addition, we agree with the administrative judge's finding that the appellants knew or suspected that they were receiving an overpayment. ID at 6. OPM refunded the overpayment to them in June 2016, in connection with their prior Board appeal. *Id.*; *Murphy Consolidation v. Office of Personnel Management*, MSPB Docket No. DA-0841-16-0353-I-2, Appeal File, Tab 6, Initial Decision (0353-I-2 ID) at 2. Accordingly, the set-aside rule applies, and the appellants are not entitled to waiver absent "exceptional circumstances," *see Boyd*, 851 F.3d at 1313, which they have not shown or alleged. Even if the set-aside rule did not apply, we agree with the administrative judge's determination that the appellants failed to show that they are entitled to waiver based on financial hardship because they have not submitted any information regarding their finances. ID at 6-7; *see* 5 C.F.R. § 845.304 (providing that financial hardship exists if an annuitant "needs substantially all of his or her current income and liquid assets to meet current ordinary and necessary living expenses and liabilities").

¶14    Annuitants who are ineligible for a waiver may nonetheless be entitled to an adjustment in the recovery schedule if they show that it would cause them financial hardship to make payment at the rate scheduled. *Maseuli v. Office of Personnel Management*, 111 M.S.P.R. 439, ¶ 10 (2009); 5 C.F.R. § 845.301. Here, the administrative judge determined that the appellants failed to establish by substantial evidence their entitlement to an adjustment of the repayment

schedule because they did not submit Financial Resources Questionnaires or provide any other information about their finances. ID at 7. They have not challenged this finding on review, 0522 PFR File, Tab 1; 0523 PFR File, Tab 1, and we discern no basis to disturb it.

The appellants' allegations regarding OPM's collecting the overpayment through administrative offset provide no basis to disturb the initial decision.

¶15     On review, the appellants argue that OPM violated their constitutional rights to due process and freedom of speech and failed to follow the applicable regulations when it collected the overpayment through administrative offset procedures. 0522 PFR File, Tab 1 at 3-6; 0523 PFR File, Tab 1 at 3-6.

¶16     As noted above, OPM informed the appellants in its prior undated final decisions that it had administratively offset their annuity payments from August to November 2014 to recover the overpayment. *Murphy v. Office of Personnel Management*, MSPB Docket No. DA-0841-16-0345-I-1, Initial Appeal File, Tab 1 at 6-9; *Dahlstrom v. Office of Personnel Management*, MSPB Docket No. DA-0841-16-0346-I-1, Initial Appeal File, Tab 1 at 6-9. The appellants appealed OPM's decisions to the Board, and, after OPM refunded the amounts collected through administrative offset to the appellants and rescinded the undated final decisions, the administrative judge issued an initial decision dismissing the appeals for lack of jurisdiction. 0353-I-2 ID. That initial decision became the Board's final decision after neither party filed a petition for review. 5 C.F.R. § 1201.113(a). Therefore, the appellants' challenges to OPM's 2014 administrative offset action are not presently before the Board and provide no basis to disturb the initial decision.

¶17     The record also reflects that OPM collected $100 from each of the appellants while the instant appeals were pending in November 2016 but that it subsequently refunded to them the amount collected and suspended its collection efforts pending resolution of these appeals. CAF, Tab 11 at 4. In addition, OPM submitted evidence on review showing that it collected a total amount of

$1,343.33 from Mr. Murphy's annuity between October 2016 and December 2017 and that it refunded the improperly collected amount on December 14, 2017. 0523 PFR File, Tab 2. The appellants have not alleged that OPM did not refund the full amounts that were improperly collected. Accordingly, OPM's improper collections provide no basis to disturb the initial decision.

We find no merit to the appellants' contention that OPM should recover the overpayment from their bank.

¶18    As noted above, OPM indicated in its final decisions that it erroneously deposited annuity payments into the appellants' joint account that were intended for another annuitant and that the appellants' bank returned $2,800 of the overpayment to OPM, thereby reducing the appellants' outstanding overpayment to $2,686.64. CAF, Tab 3 at 6, Tab 4 at 6. In addition, OPM explained that Department of the Treasury regulations and the *Green Book: A Guide to Federal Government ACH Payments* (*Green Book*)[13] prohibit U.S. banks from depositing Government funds into bank accounts whose registered owners are different from the intended payee but that the appellants' bank nonetheless allowed payments "clearly directed to a person with a name different from [theirs] to be deposited into [their] account." CAF, Tab 3 at 7, Tab 4 at 7. The appellants argued that OPM should collect the overpayment from the bank, rather than from them, because its error allowed the incorrect payments to take place. CAF, Tab 18, Hearing Compact Disc (HCD) (opening statements of Mr. Murphy). The administrative judge did not address this argument in the initial decision, and the appellants raise it again on review. 0522 PFR File, Tab 1 at 8; 0523 PFR File,

_____

[13] The Department of the Treasury's Bureau of the Fiscal Service issues the *Green Book*, which provides procedures and guidelines for financial institutions that process Automated Clearing House (ACH) payments from the Federal Government. 31 C.F.R. § 210.2(k), (*l*), (p); *Green Book* at ii (Jan. 2021), *available at* https://www.fiscal.treasury.gov/fsreports/ref/greenBook/greenbook_home.htm (last visited Mar. 29, 2023). Financial institutions that receive ACH payments from the Government are bound to comply with the instructions and procedures set forth in the *Green Book.* 31 C.F.R. § 210.3(c).

Tab 1 at 8. For the reasons that follow, we find no merit to the appellants' argument and, therefore, further find that the administrative judge's failure to address this argument below did not prejudice the appellants. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (stating that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversing an initial decision). We modify the initial decision consistent with this section to address this argument.

¶19        Pursuant to the *Green Book* and the applicable regulations, if a financial institution "becomes aware that an agency has originated an [Automated Clearing House (ACH)] credit entry to an account that is not owned by the payee whose name appears in the ACH payment information, [the financial institution] shall promptly notify the agency." 31 C.F.R. § 210.8(d); *Green Book* at 2-6, 4-3. The *Green Book* notes that a financial institution may become aware of a misdirected payment if, among other things, it "manually posts [its] ACH credits [and] notices that a payment is being credited to the wrong account." *Green Book* at 2-6. The *Green Book* clarifies, however, that "an institution is not required to match names when posting a Federal government ACH entry." *Id.*

¶20        There is no evidence here establishing that the appellants' bank was aware that the misdirected annuity payments were intended for another annuitant or that its obligation to notify OPM of the misdirected payment had been triggered. *Id.* Even if the bank noticed that the name of the intended payee did not match the owners of the account, it does not appear that the *Green Book* requires OPM to hold the bank liable for the misdirected funds that were received by and recoverable from the appellants. Therefore, although a financial institution may be held liable when the Government sustains a loss as a result of its failure to properly handle ACH payments, 31 C.F.R. § 210.8(b), there does not appear to be any basis here for OPM to hold the bank liable for funds that OPM incorrectly routed to the appellants.

¶21    The appellants have not identified any other basis, and we are aware of none, to hold the bank liable for the funds they received through OPM's misdirected payments. Accordingly, we find no merit to their contention that OPM may, or is required to, collect the overpayment from their bank.[14]

The appellants' allegation that the administrative judge denied them a fair hearing provides no basis to disturb the initial decision.

¶22    The appellants also argue on review that the administrative judge denied them a fair hearing because she did not allow them to call OPM employees as witnesses. 0522 PFR File, Tab 1 at 4; 0523 PFR File, Tab 1 at 4. The record reflects that the administrative judge initially approved the appellants' requests to call two OPM employees as witnesses at the hearing. CAF, Tab 8 at 6. OPM objected, arguing that the employees had no personal knowledge of the facts of the case. CAF, Tab 12 at 4-5. In an order rescheduling the hearing, the administrative judge denied the appellants' request to call the OPM employees as witnesses. CAF, Tab 17. She advised the parties that, if they objected to the order, they must submit a written objection or raise the objection orally at the start of the hearing. *Id.* at 2.

¶23    At the beginning of the hearing, Mr. Murphy objected to the disallowance of OPM's employees as witnesses, arguing in particular that he wanted to question the Acting Chief of Quality Control and Authorization Operations Support (Acting Chief). HCD (opening statements by Mr. Murphy); CAF, Tab 4 at 8. Mr. Murphy argued that the Acting Chief had informed him by telephone that he was going to "screw [him]" and that he sought to collect the overpayment

---

[14] OPM has advised the Board that it may seek recovery of any debt remaining upon an appellant's death from the appellant's estate or other responsible party. A party responsible for any debt remaining upon the appellant's death may include an heir (spouse, child or other) who is deriving a benefit from the appellant's Federal benefits, an heir or other person acting as the representative of the estate if, for example, the representative fails to pay the United States before paying the claims of other creditors in accordance with 31 U.S.C. § 3713(b), or transferees or distributers of the appellant's estate. *Pierotti v. Office of Personnel Management*, 124 M.S.P.R. 103, ¶ 13 (2016).

from the appellants, rather than the bank, because of retaliatory motives. HCD (opening statements by Mr. Murphy). On review, Mr. Murphy argues that the administrative judge erred in disallowing the testimony of the Acting Chief because, according to Mr. Murphy, he was "personally involved in this matter" and because his testimony would have revealed his "illegal activities and abusive actions." 0523 PFR File, Tab 1 at 4.

¶24     An administrative judge has wide discretion to control the proceedings, including the authority to exclude testimony she believes would be irrelevant, immaterial, or unduly repetitious. *Guerrero v. Department of Veterans Affairs*, 105 M.S.P.R. 617, ¶ 20 (2007); 5 C.F.R. § 1201.41(b)(7). To obtain reversal of an initial decision on the ground that the administrative judge abused her discretion in excluding evidence, the petitioning party must show on review that relevant evidence, which could have affected the outcome, was disallowed. *Jezouit v. Office of Personnel Management*, 97 M.S.P.R. 48, ¶ 12 (2004), *aff'd per curiam*, 121 F. App'x 865 (Fed. Cir. 2005).

¶25     Here, as discussed above, the appellants may not assert an affirmative defense of whistleblower retaliation and, moreover, have not shown that OPM exercised any discretion in seeking to collect the overpayment from them, rather than from the bank. Therefore, the appellants have not shown that the Acting Chief's testimony would be relevant to the dispositive questions at issue in these appeals. Furthermore, the appellants have not alleged, and we do not discern, that the second OPM employee would have provided any relevant, nonrepetitious, and material testimony. In light of the foregoing, we find that the administrative judge did not abuse her discretion in excluding OPM's employees as witnesses at the hearing. *See McDaniel v. Office of Personnel Management*, 123 M.S.P.R. 55, ¶¶ 6, 9 (2015) (declining to grant review based on an administrative judge's denying an appellant's request for an OPM witness because the testimony sought did not concern the only relevant question of whether another individual was entitled to a lump-sum annuity payment); *Brownscombe v. Office of Personnel*

*Management*, [37 M.S.P.R. 382](), 386 (1988) (finding that an administrative judge did not err in denying the appellant's request to call as witnesses the OPM officials who decided his retirement case because the appellant did not establish that their testimony would have added any new information to the information already contained in the record), *aff'd per curiam*, 871 F.2d 1097 (Fed. Cir. 1989) (Table).

## NOTICE OF APPEAL RIGHTS[15]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. [5 C.F.R. § 1201.113](). You may obtain review of this final decision. [5 U.S.C. § 7703](a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. [5 U.S.C. § 7703](b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

---

[15] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

(1) **Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you

receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

(3) **Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[16]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

---

[16] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                    /s/ for
                                  Jennifer Everling
                                  Acting Clerk of the Board

Washington, D.C.