# United States Court of Appeals for the Federal Circuit

---

**ROBIN G. BOYD,**
*Petitioner*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent*

---

2016-1078

---

Petition for review of the Merit Systems Protection Board in No. PH-0845-15-0215-I-1.

---

Decided: March 20, 2017

---

CONO A. CARRANO, Akin Gump Strauss Hauer & Feld LLP, Washington, DC, argued for petitioner. Also represented by RYAN S. STRONCZER.

ADAM E. LYONS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., ELIZABETH M. HOSFORD.

---

Before O'MALLEY, BRYSON, and WALLACH, *Circuit Judges.*

BRYSON, *Circuit Judge.*

I

Petitioner Robin Boyd was a mail processor for the United States Postal Service from 1985 to 2010. On March 2, 2011, she applied for immediate retirement based on disability. She also applied for disability retirement annuity benefits under the Federal Employees Retirement System ("FERS").

By letter dated June 21, 2011, the Office of Personnel Management ("OPM") notified Ms. Boyd that it had approved her application for disability retirement annuity benefits. The letter explained that OPM would provide her with monthly interim FERS benefits in the amount of approximately 80% of her actual FERS benefits. The letter further explained that Ms. Boyd would not receive FERS benefits until OPM received confirmation that she had applied for Social Security disability benefits. The letter directed Ms. Boyd to apply for Social Security benefits and to notify OPM when she applied for those benefits.

In a separate paragraph, the letter contained the following directive, in boldface type: "If the Social Security Administration awards you monthly benefits, you must immediately notify us of the amount and the effective date of the monthly benefit."

The June 21, 2011, letter also explained that Ms. Boyd's FERS benefits would be offset by any Social Security benefits she received. The offset for the first year would be 100% of her Social Security benefits; the offset after the first year would be 60% of her Social Security benefits. *See also* 5 U.S.C. § 8452(a). The letter then stated, also in boldface type:

> Because the FERS disability benefit must be re-
> duced by 100 percent of any Social Security bene-
> fit payable for 12 months, Social Security checks
> should not be negotiated until the FERS benefit
> has been reduced. The Social Security checks will
> be needed to pay OPM for the reduction which
> should have been made in the FERS annuity.

Ms. Boyd admits that she received the June 21, 2011, letter. She then applied for Social Security benefits and continued receiving interim FERS benefits.

On August 18, 2012, the Social Security Administration advised Ms. Boyd that she was entitled to monthly Social Security benefits starting with the month of August 2012. Ms. Boyd provided a copy of that notice to OPM in September 2012.

OPM did not immediately reduce Ms. Boyd's FERS benefits by the amount of her Social Security benefits. Nor did Ms. Boyd refrain from negotiating the Social Security checks she received. Instead, she negotiated the Social Security checks. Five months later, on January 20, 2013, OPM sent Ms. Boyd a letter stating that her FERS benefits had been adjusted in light of the Social Security benefits she had received since August 2012, and advising her that she had been overpaid for the months of August 2012 through December 2012 in an amount totaling $3,322. The letter stated that OPM would recover the overpayment by offsetting her FERS benefits in 36 monthly installments of $92.27 beginning in April 2013.

On February 6, 2013, Ms. Boyd requested a waiver of her obligation to reimburse OPM for the overpayment; alternatively, she requested a reduced payment schedule based on financial hardship. To support her request, she enclosed a completed OPM Financial Resources Questionnaire in which she detailed her financial condition. Following that request, OPM refrained from withholding

funds from her monthly benefits, pending resolution of the waiver issue.

In a letter dated December 8, 2014, OPM advised Ms. Boyd of the requirements for a waiver of the reimbursement obligation. OPM informed her that it needed an updated Financial Resources Questionnaire from her "in order to make a fair decision on [her] request for waiver of the overpayment."

Ms. Boyd did not send OPM an updated Financial Resources Questionnaire, and on January 16, 2015, OPM denied her request for a waiver. The denial letter stated that, "[b]ased on the evidence of record, including your written submissions, [OPM] finds that recovery of the overpayment would not be against equity and good conscience." However, upon considering Ms. Boyd's 2013 Financial Resources Questionnaire, OPM adjusted her repayment schedule and reduced the monthly offset by more than half, from $92 to $40.

Proceeding *pro se*, Ms. Boyd appealed OPM's denial to the Merit Systems Protection Board. In her appeal form, she elected e-filing and provided an email address to receive notifications of filings and orders.

On February 10, 2015, the administrative judge assigned to Ms. Boyd's appeal ordered her to submit any evidence and argument in support of her appeal within 30 days. Ms. Boyd did not file anything. The administrative judge then issued an order directing Ms. Boyd to show good cause for her failure to respond, explaining that absent a response, the administrative judge would decide the case without a hearing and based solely on the written record. Ms. Boyd again filed nothing.

The written record included Ms. Boyd's OPM file. But missing from the OPM file was the Financial Resources Questionnaire that had been attached to her February 2013 waiver request; only the first page of that waiver

request was included, which did not include her responses to the questionnaire.

Based on the written record, the administrative judge affirmed OPM's denial of a waiver. The administrative judge found that Ms. Boyd had not demonstrated eligibility for a waiver because, "[a]lthough she timely notified OPM after she was awarded [Social Security] disability benefits," she was "not without fault regarding the overpayment." Specifically, the administrative judge found that Ms. Boyd had "neither alleged nor proved that she did not receive OPM's [June 21, 2011] letter," and that "[a]s such, she was instructed not to negotiate any [Social Security] benefits checks until her FERS payment had been reduced."[1] Ms. Boyd was "not without fault," the administrative judge ruled, because she had failed to set aside the Social Security checks as the June 21, 2011, letter had directed. The administrative judge did not reach the question whether collection of the overpayment would be against equity and good conscience.

With regard to the adjustment of the repayment schedule, the administrative judge noted that Ms. Boyd did not submit a Financial Resources Questionnaire in the appeal or offer other evidence regarding her monthly income and expenses. For that reason, the administrative judge concluded that there was no evidence to refute the reasonableness of the reduced payment schedule proposed by OPM.

Ms. Boyd filed a petition for review by the full Board. She submitted new evidence of financial hardship and alleged that she had not received any of the administra-

---

[1] The opinion refers to a "January 16, 2015 letter." That date appears to be a scrivener's error in light of the administrative judge's preceding reference to "OPM's June 21, 2011 letter" and the discussion of its contents.

tive judge's communications. She explained that although she had arranged to be notified of all Board proceedings by email, her fiancé had deleted the emails sent by the Board, thinking they were spam.

The Board affirmed the administrative judge's decision that Ms. Boyd was not entitled to a waiver of her repayment obligation. The Board concluded that she was not entitled to a waiver because OPM had instructed her not to negotiate the Social Security benefits checks, yet she had done so. The Board also found that any shortcomings in the record before the administrative judge were the result of Ms. Boyd's lack of due diligence. With respect to Ms. Boyd's reassertion of her claim of financial hardship, the Board found that in light of her failure to offer evidence regarding her monthly income and expenses, there was no reason to disturb the administrative judge's decision affirming OPM's adjusted monthly repayment schedule.

## II

Ms. Boyd argues that the Board abused its discretion (1) in determining that she was at fault for the overpayment even though she notified OPM of her award of Social Security benefits, (2) by failing to consider evidence of financial hardship she had submitted to OPM and to the Board, and (3) by finding that she had not shown good cause for her failure to respond to the Board's electronic notices.

## A

Regarding OPM's collection of FERS overpayments, 5 U.S.C. § 8346(b) provides, in pertinent part:

> Recovery of payments under this subchapter [including FERS annuity benefits] may not be made from an individual when, in the judgment of the Office of Personnel Management, the individual is

without fault and recovery would be against equity and good conscience.

The statute delegates to OPM the authority to determine what constitutes "without fault" and "recovery [that] would be against equity and good conscience." OPM has done so by regulation, 5 C.F.R. § 831.1401 *et seq.*, and through published policy guidelines interpreting its regulations. Ret. & Ins. Grp., U.S. Office of Pers. Mgmt., *Policy Guidelines on the Disposition of Overpayments under the Civil Service Retirement System and the Federal Employees' [sic] Retirement System* (1995) ("*Policy Guidelines*").

As pertinent here, the regulations provide that a recipient of an overpayment is "without fault if he/she performed no act of commission or omission which resulted in the overpayment." 5 C.F.R. § 831.1402. One of the considerations bearing on the finding of fault is whether the recipient "accepted a payment which he/she knew or should have known to be erroneous." *Id.* § 831.1402(a)(3). The regulations state that recovery is "against equity and good conscience" when, among other factors, recovery "would cause financial hardship to the person from whom it is sought." *Id.* § 831.1403(a)(1).

OPM's *Policy Guidelines* explain in more detail what is required for a waiver of FERS benefits overpayments under the regulations. The guidelines state: "In general, an individual is not without fault if," *inter alia*, "he/she accepted a payment which he/she knew to be erroneous[] or . . . should have known to be erroneous." *Policy Guidelines* § I.B.3. However, the guidelines also provide an exception to the determination of fault:

Prompt Notification Exception. Individuals who accept a payment in excess of the amount to which they are entitled will automatically be found without fault, regardless of whether they knew or should have known that the payment was errone-

ous, if they promptly contact OPM and question the correctness of the payment. In general, an individual must contact OPM within 60 days of the receipt of the overpayment—i.e., a one-time prompt notification requirement. (Note: This rule provides an exception to the general rules cited above (I.B.3) by allowing certain persons who knowingly accept overpayments to be found without fault if they demonstrate good faith by promptly bringing the overpayments to OPM's attention. However, the fact that they suspected or knew that they had received an overpayment—as evidenced by their contacting of OPM—will have a bearing on equity and good conscience determinations. See the Set-Aside Rule, guideline I.C.4.)

*Policy Guidelines* § I.B.6.

The Set-Aside Rule, to which the Prompt Notification Exception refers, states:

Individuals who are aware that they are receiving overpayments are obligated by the principles of equity and good conscience to set aside the amount overpaid pending recoupment by OPM. Thus, an individual who accepted a payment which he/she suspected or knew to be erroneous but who is found without fault under the Prompt Notification Exception (I.B.6) is obliged to set the overpaid money aside pending recovery by OPM. . . . Unless there are exceptional circumstances, recovery by OPM in these cases is not against equity and good conscience. (Note: Exceptional circumstances would involve extremely egregious errors or delays by OPM—e.g., a failure to issue a written decision within 4 years of a debtor's request for waiver. Financial hardship is not an exceptional circumstance.)

*Policy Guidelines* § I.C.4 (internal citations omitted).

As the quoted passages from the OPM *Policy Guidelines* make clear, an individual who is overpaid but who promptly notifies OPM of the overpayment is categorically deemed to be "without fault." For such an individual, the remaining question is whether recovery of the overpayment would be against equity and good conscience. Under the Set-Aside Rule, if that individual suspected or knew that he or she had received an overpayment (and therefore had an obligation to set aside the overpaid funds), the individual is not eligible for a waiver under the "equity and good conscience" standard and would be entitled to relief only under the more exacting "exceptional circumstances" standard.

1. OPM argues that substantial evidence supports the administrative judge's finding of fault, and that the administrative judge "properly declined to consider the equity and good conscience factor." But OPM's guidelines are directly contrary to OPM's position before this court. In this appeal, OPM ignores the Prompt Notification Exception and does not explain why that exception is inapplicable to Ms. Boyd. Contrary to OPM's argument, the Prompt Notification Exception plainly applies to Ms. Boyd's situation, because after the Social Security Administration informed Ms. Boyd that she had been awarded Social Security benefits, she notified OPM within 60 days of her receipt of Social Security benefits for August 2012.

The Board has applied the Prompt Notification Exception in similar circumstances, with OPM's acquiescence. *E.g.*, *Maxwell v. Office of Pers. Mgmt.*, 78 M.S.P.R. 350, 361 (1998) ("OPM stipulated below that the appellant was 'without fault'"); *James v. Office of Pers. Mgmt.*, 72 M.S.P.R. 211, 218 (1996) ("[B]oth OPM and the administrative judge apparently found that the appellant's response to OPM's questionnaire . . . stating that he was receiving social security disability payments was sufficient to meet the 'prompt notification' requirement so as to render him without fault").

We conclude that Ms. Boyd is without fault under the plain terms of OPM's guidelines. The administrative judge's contrary finding was based on an erroneous interpretation of the law. *See Gose v. U.S. Postal Serv.*, 451 F.3d 831, 836 (Fed. Cir. 2006).[2]

---

[2]  OPM does not argue that this court should defer to its litigating position in this case as an authoritative interpretation of OPM's regulations and guidelines. It has therefore waived that argument. *See Mass. Mut. Life Ins. Co. v. United States*, 782 F.3d 1354, 1369 (Fed. Cir. 2015). In any event, we note that an agency's interpretation of its own regulations is not entitled to deference if, as in the case of OPM's brief, the interpretation is "plainly erroneous or inconsistent with the regulation." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012). While in some circumstances an agency's litigation position has been accorded deference as reflecting the agency's interpretation of its own regulations, that is not true in a case such as this one, where the agency's litigating position is "wholly unsupported by regulations, rulings, or administrative practice." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988); *see also Inv. Co. Inst. v. Camp*, 401 U.S. 617, 628 (1971) (Where Congress has delegated authority to an agency, it "has delegated to the administrative official and not to appellate counsel."). We note that the practice of according deference in some instances to positions taken in agency briefing has been the subject of considerable recent debate. *United Student Aid Funds, Inc. v. Bible*, 136 S. Ct. 1607, 1608 (2016) (Thomas, J., dissenting from denial of certiorari); *see also Johnson v. McDonald*, 762 F.3d 1362, 1366-67 (Fed. Cir. 2014) (O'Malley, J., concurring). But even in its most vigorous form, that practice would not support the interpretation of OPM's regulations and guidelines found in the brief submitted on behalf of OPM in this case, particu-

2.  OPM next argues that even if the Prompt Notification Exception applies, it does not justify a waiver in this case.  OPM points out that Ms. Boyd has raised only a claim of financial hardship; according to OPM, she was required to show "exceptional circumstances" in order to be eligible for a waiver.  As OPM's *Policy Guidelines* make clear, the "exceptional circumstances" standard is much more demanding than the "equity and good conscience" standard, as "exceptional circumstances" are limited to "extremely egregious errors or delay by OPM."  But OPM's argument skips an important step.

As noted, for a person like Ms. Boyd who is "without fault," the OPM guidelines require a determination whether that person "suspected or knew" that he or she had received an overpayment.  The administrative judge, however, did not decide that critical question.  OPM takes the position that there was no need for the administrative judge to do so.  OPM argues that Ms. Boyd must demonstrate exceptional circumstances to obtain a waiver, and notes that she has only alleged and put forth evidence of financial hardship, which is not an exceptional circumstance. *Policy Guidelines* § I.C.4.

We find no support in the OPM *Policy Guidelines* for OPM's argument.  The Set-Aside Rule is clear:  It applies if the recipient of a payment "knew"—or, at a minimum, "suspected"—that the payment was erroneous.  *Policy Guidelines* § I.C.4.  The Set-Aside Rule does not apply to individuals who do not know or suspect they are being overpaid.  Those individuals do not know that the money does not belong to them, and may act in good faith when

---

larly in light of the fact that the position taken in the brief differs from the position OPM took when it applied the guidelines to Ms. Boyd's waiver request in its January 16, 2015, denial letter.

they fail to set aside the overpayments. *See Okonski v. Office of Pers. Mgmt.*, 63 M.S.P.R. 446, 453 (1994) (appellant could not reasonably have been expected to set aside money if he did not have a reason to know that it was an overpayment).

To place unknowing individuals in the same position as knowing individuals is an unreasonable interpretation of the guidelines, as it renders the language requiring knowledge superfluous. *Policy Guidelines* § I.C.4 ("Individuals who are aware that they are receiving overpayments are obligated by the principles of equity and good conscience to set aside the amount overpaid pending recoupment by OPM. Thus, an individual who accepted a payment which he/she suspected or knew to be erroneous . . . is obliged to set the overpaid money aside"); *see also id.* § I.B.3 ("[T]he fact that they suspected or knew that they had received an overpayment—as evidenced by their contacting of OPM—will have a bearing on equity and good conscience determinations.").

The analysis is therefore different for unknowing individuals, for whom the equity and good conscience test applies. And for such persons, financial hardship can serve as a basis for finding that recovery is against equity and good conscience. 5 C.F.R. § 831.1403(a)(1).

3. Even though the question of knowledge was not answered below, OPM argues that Ms. Boyd knew of the overpayment based on the administrative judge's finding that Ms. Boyd received the June 21 notice. OPM points out that Ms. Boyd followed the instruction in the notice to inform OPM of her award of Social Security benefits. According to OPM, that proves she understood the notice, which also "instructed her" not to negotiate her Social Security benefits; therefore, according to OPM, she knew she was supposed to set those payments aside.

This may be enough evidence from which to infer knowledge. But Ms. Boyd argues it is not, both because

the June 21 letter was less clear than OPM contends[3] and because of her personal circumstances.[4] This is a factual debate for the Board to resolve in the first instance. Because neither the administrative judge nor the Board made any findings on the issue of knowledge, we remand for a determination of whether Ms. Boyd knew or suspected that she had been overpaid, and if she did not, whether the recovery of the overpayment would be against equity and good conscience.

4. There is a final point that warrants discussion. In the penultimate paragraph of its opinion, the Board stated that the administrative judge correctly found that Ms. Boyd had not submitted a Financial Resources Questionnaire for Board review or any other evidence regarding her monthly income and expenses. In light of her failure to submit such evidence, the Board found "no reason to disturb the initial decision finding that Ms. Boyd had been overpaid and that she had failed to prove that the reduced repayment schedule would cause her financial hardship." While the Board's reference to the absence of evidence of financial hardship could be read as

---

[3]    The Board's finding that the June 21, 2011, letter "instructed" Ms. Boyd to set aside the overpayments does not constitute a finding that she knew or suspected that she was obliged to do so. She alleged in her original Appeal Form and in her petition for review to the Board that she did not understand that she had been overpaid. What matters is not what she was "instructed" to do, but whether she adverted to and understood that instruction.

[4]    According to the guidelines, a "[k]nowledge [d]etermination . . . should take into account" multiple factors, including "the individual's age, physical and mental condition, and/or the nature of the information supplied to him/her by OPM or a Federal agency." *Policy Guidelines* § I.B.4.

setting forth an alternative ground for upholding the administrative judge's decision on the issue of waiver, the portion of the administrative judge's opinion to which that discussion was addressed, as clearly stated in the Board's final decision, was the portion discussing the adjustment of the repayment schedule. The ground relied on by the administrative judge for denying Ms. Boyd's requested waiver—and the ground upheld by the Board regarding her waiver request—was that she was not without fault regarding the overpayment, and that conclusion, we hold, was legally erroneous.[5]

## B

Ms. Boyd also contends that the Board abused its discretion in finding that she failed to show good cause for her failure to respond to the Board's electronic notices.

Ms. Boyd relies on the "good cause" standard from 5 C.F.R. § 1201.12, which provides that "[a] judge may, for good cause shown, waive a Board regulation unless a

---

[5]   A further reason for not upholding the Board's decision on waiver based on the absence of evidence of financial hardship is that OPM failed to include Ms. Boyd's 2013 Financial Resources Questionnaire in the agency record that was sent to the Board, which may have affected the Board's financial hardship analysis. That evidence, if it is available, should be considered on remand to the extent the Board concludes it is relevant.

Ms. Boyd also claims that the administrative judge and the Board failed to consider evidence of financial hardship that she submitted. On remand, if Ms. Boyd prevails on her claim that she did not know or suspect she was receiving overpayments, the Board will be free to consider that evidence, and any other evidence it considers appropriate in addressing the issue of financial hardship.

statute requires application of the regulation." *See Phillips v. United States Postal Serv.*, 695 F.2d 1389, 1391 (Fed. Cir. 1982) (affirming Board decision not to excuse untimely filing of appeal under 5 C.F.R. § 1201.12 when untimeliness resulted from "inexcusable lack of diligence" and "carelessness").

The Board rejected Ms. Boyd's argument on the ground that her failure to file a prehearing submission or to request a hearing was attributable to her lack of diligence. *See Rocha v. Merit Sys. Prot. Bd.*, 688 F.3d 1307, 1311 (Fed. Cir. 2012) (stating that, under good cause standard, the Board "acted well within its discretion" in refusing to allow untimely filing when the petitioner did not "carry his burden to establish that he exercised due diligence or ordinary prudence in monitoring his case.").

The only explanation Ms. Boyd provides for her failure to submit evidence to the administrative judge or to respond to the administrative judge's show-cause order by requesting a hearing is that her fiancé deleted all the emails sent by the Board from the email account she chose to use for e-filing. That explanation, however, does not justify her failure, given her choice to register as an e-filer.

As the Board noted, Ms. Boyd chose to receive Board communications exclusively by email. *See* 5 C.F.R. § 1201.14(e)(1) ("Registration as an e-filer constitutes consent to accept electronic service of . . . documents issued by the [Board]."); *id.* § 1201.14(j)(2) (providing that the Board will serve by non-electronic means only when advised of non-delivery of e-mail, followed by a second failed attempt). Moreover, even if the relevant emails were mistakenly deleted, Ms. Boyd was "responsible for monitoring [her] case activity at the Repository at e-Appeal Online to ensure that [she] ha[d] received all case-related documents." *Id.* § 1201.14(j)(3); *see also id.* § 1201.14(j)(2) (noting that "[d]elivery of e-mail can en-

counter a number of failure points" and stating that "[e]-filers are responsible for ensuring that e-mail from @mspb.gov is not blocked by filters").[6]

## C

Notwithstanding Ms. Boyd's failure to respond to the administrative judge's directions regarding the submission of evidence and argument, and her failure to request a hearing, the administrative judge's decision, sustained by the Board, was based on a legally erroneous application of the overpayment recovery statute, 5 U.S.C. § 8346(b), as interpreted by OPM in its regulations and *Policy Guidelines*. We therefore vacate the Board's order and remand for further consideration of Ms. Boyd's claim under the correct legal standards.

**VACATED AND REMANDED**

---

[6] Ms. Boyd argues that administrative judges "should provide more guidance to *pro se* appellants and interpret their arguments in the most favorable light." *O'Keefe v. U.S. Postal Serv.*, 318 F.3d 1310, 1316 (Fed. Cir. 2002). Here, however, the administrative judge did not have the opportunity to provide such guidance, given Ms. Boyd's nonresponsiveness. Ms. Boyd's *pro se* status does not excuse her failure to meet the e-filing requirements. *See Rocha*, 688 F.3d at 1310 (concluding that the Board did not abuse its discretion in refusing to allow the untimely filing of a petition for review by a *pro se* petitioner because he "was required by regulation" to monitor his case activity).