NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LEQUITA T. NANCE,**
*Petitioner*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent*

---

2024-1827

---

Petition for review of the Merit Systems Protection Board in No. AT-0845-22-0136-I-1.

---

Decided: February 5, 2025

---

LEQUITA T. NANCE, Phenix City, AL, pro se.

AN HOANG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY.

---

Before TARANTO, STOLL, and STARK, *Circuit Judges.*

PER CURIAM.

In 2016, LeQuita T. Nance's federal employment came to an end, and she was approved to receive disability-retirement benefits under the Federal Employees' Retirement System (FERS). In 2021, the U.S. Office of Personnel Management (OPM) ruled that Ms. Nance had been overpaid in FERS disability benefits from April 1, 2016, through April 30, 2019, due to her simultaneous receipt of a Social Security Administration (SSA) Disability Insurance Benefit. The Merit Systems Protection Board (Board) affirmed OPM's decision. *Nance v. Office of Personnel Management*, No. AT-0845-22-0136-I-1, 2024 WL 1091561, at *1 (M.S.P.B. Mar. 12, 2024) (*2024 Decision*), adopting, as the Board's decision, *Nance v. Office of Personnel Management*, No. AT-0845-22-0136-I-1, 2022 WL 2390886 (M.S.P.B. June 30, 2022) (*2022 Decision*). On Ms. Nance's appeal to us, we affirm.

I

In January 2016, Ms. Nance's federal employment ended, and she was approved for FERS disability benefits, effective in February 2015. S. Appx. 41; S. Appx. 63.[1] She also became entitled to receive a SSA Disability Insurance Benefit—effective on July 1, 2015, and terminating on April 1, 2016. S. Appx. 41. By statute, Ms. Nance's receipt of a SSA disability benefit required a reduction in her FERS annuity, 5 U.S.C. § 8452(a)(1)–(2), but her annuity was not actually reduced at that time. S. Appx. 41–43. In February 2017, OPM notified Ms. Nance that she had been overpaid $11,240.00 for the period of July 1, 2015, through March 30, 2016. S. Appx. 41–44. She fully repaid that amount, S. Appx. 41, which is not at issue in this appeal.

In January 2019, Ms. Nance's SSA benefits were retroactively reinstated, as of April 1, 2016, but her FERS

---

[1] "S. Appx." refers to the Supplemental Appendix submitted by the Respondent.

annuity was not reduced until June 1, 2019. S. Appx. 42, 48; Resp. Br. at 3. On June 10, 2019, OPM notified Ms. Nance that she had been overpaid $29,413.00 for the period of April 1, 2016, through April 30, 2019. S. Appx. 52–53. She requested reconsideration, but on December 8, 2021, OPM affirmed its initial decision. S. Appx. 41–44.

Ms. Nance appealed to the Board. On June 30, 2022, an administrative judge issued an initial decision finding that OPM had proven "the existence and mathematical correctness of the overpayment" by a preponderance of the evidence. *2022 Decision*, at 3–5.[2] The administrative judge also found that the "set-aside rule" applied—Ms. Nance knew or should have known that the payment was erroneous and was expected to "set aside" the money—so that any waiver of repayment of overpayments depended on showing exceptional circumstances. *Id.* at 5–7; *see also Boyd v. Office of Personnel Management*, 851 F.3d 1309, 1312–14 (Fed. Cir. 2017) (discussing the set-aside rule). The administrative judge determined that Ms. Nance had not shown exceptional circumstances or, even, financial hardship justifying an adjustment of the recovery schedule. *2022 Decision*, at 6–8. Ms. Nance sought full Board review of the initial decision, but on March 12, 2024, the Board affirmed the initial decision, adopting it as the final Board decision. *2024 Decision*, at *1.

Ms. Nance petitioned this court for review on May 14, 2024—a day after the deadline for filing her appeal. *See* 5 U.S.C. § 7703(b)(1)(A); Federal Rule of Appellate Procedure 26(a). We have jurisdiction under 28 U.S.C. § 1295(a)(9) and 5 U.S.C. § 7703(b)(1)(A).

---

[2]    For the *2022 Decision*, we cite the page numbers on the administrative judge's opinion in the Supplemental Appendix. *See* S. Appx. 14–28.

## II

We may set aside the Board's decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). The petitioner (Ms. Nance) bears the burden of establishing reversible error in the Board's final decision. *Sistek v. Department of Veterans Affairs*, 955 F.3d 948, 953 (Fed. Cir. 2020). We review the Board's legal conclusions without deference and its findings of fact for substantial-evidence support. *McIntosh v. Department of Defense*, 53 F.4th 630, 638 (Fed. Cir. 2022).

As a preliminary matter, the government contends that this appeal, which was not filed within 60 days of the Board's final decision as required by 5 U.S.C. § 7703(b)(1)(A), should be dismissed as untimely. The § 7703(b)(1)(A) deadline is not jurisdictional, *Harrow v. Department of Defense*, 601 U.S. 480, 483, 489–90 (2024), and this court may, without considering untimeliness, affirm the Board on the merits if there is no basis for setting aside the Board decision. *See Long v. Department of Veterans Affairs*, No. 2023-2406, 2024 WL 3770715, at *1 (Fed. Cir. Aug. 13, 2024) (non-precedential). We follow that course here, and so we do not address whether equitable tolling is available (here or ever) to excuse untimeliness under § 7703(b)(1)(A).

Regarding the merits: Ms. Nance challenges OPM's calculation of the second overpayment, arguing that the second overpayment period overlapped with the first and that the amounts OPM found she received did not match the amounts deposited into her bank account. Ms. Nance also contends that she should receive a waiver of overpayment collection. Ms. Nance relies on *Cebzanov v. Office of Personnel Management*, 100 M.S.P.R. 170 (2005), and *Walker*

*v. Office of Personnel Management*, No. SF-0845-15-0131-I-1, 2015 WL 1015584 (M.S.P.B Mar. 6, 2015), as support.

We conclude that substantial evidence supports the Board's finding that OPM has proven the existence and amount of the disputed overpayment by a preponderance of the evidence. *2022 Decision*, at 3–5. As the Board noted, OPM presented a computer printout covering the overpayment period of April 1, 2016, through April 30, 2019, with calculations showing that Ms. Nance "was paid a gross amount of $43,905 when she was actually due a gross amount of $14,492, creating an overpayment of $29,413." *Id.* at 4–5 (citing S. Appx. 57). OPM provided a similar printout showing how the earlier (not currently disputed) overpayment was calculated for the period of February 5, 2015, through March 30, 2016,[3] which has no overlap with the second overpayment period. *Id.* at 5 (citing S. Appx. 58). The Board further noted that Ms. Nance "has presented no evidence contradicting the evidence presented by OPM" on this point, *2022 Decision*, at 5, and Ms. Nance identifies to this court no evidence on this point that the Board disregarded. We discern no error in the Board's determination.

Ms. Nance asserts that the payment amounts OPM used in its calculation do not match the actual amounts deposited into her bank account, but that assertion, even if

---

[3]     The earlier printout includes amounts paid and amounts due to Ms. Nance for April 1, 2016, through January 30, 2017, which is part of the second overpayment period, but those amounts did not contribute to the overpayment calculation. S. Appx. 58. Those amounts became outdated, as the earlier printout was created on February 16, 2017, before the retroactive reinstatement (in January 2019) of her SSA disability benefit (effective April 1, 2016), which generated the second overpayment. S. Appx. 42, 48; Resp. Br. at 3.

true, would not show reversible error in the Board's decision. OPM's "Paid and Due Computation" sheets are based on gross amounts. *See id.* at 4–5 (citing S. Appx. 57–58) (discussing "gross amount[s]" used in OPM's calculation). Ms. Nance does not show legal error in OPM's use of gross amounts for the overpayment calculation. Nor has she identified any basis for assuming that gross amounts must equal net amounts (the latter having, *e.g.*, withheld taxes subtracted) deposited into her bank account.

We similarly discern no error in the Board's determination that Ms. Nance was not entitled to a waiver of the obligation to repay overpayments received. *2022 Decision*, at 5–7. The Board found that Ms. Nance knew or should have known she was not entitled to the money: She received two letters in 2016 "notifying her of the effect of receiving SSA disability benefits and instructing her not to spend any retroactive SSA benefits she received." *2022 Decision*, at 6; S. Appx. 61–62; S. Appx. 63–65. She had also "been through the overpayment process before." *2022 Decision*, at 6; S. Appx. 41. And, the Board found, Ms. Nance identified no exceptional circumstances, *i.e.*, egregious delays or other negligent conduct by OPM, that would entitle her to be excused from repayment despite the application of the set-aside rule. *2022 Decision*, at 6–7. Ms. Nance does not dispute those findings, which were supported by substantial evidence.

Finally, the legal arguments that Ms. Nance makes based on *Cebzanov* and *Walker* do not change the outcome of this appeal. We understand Ms. Nance's arguments to be that OPM bears the burden of establishing the existence and amount of an overpayment by preponderant evidence, and that waiver may be granted where recovery of the overpayment is against equity and good conscience. *See Cebzanov*, 100 M.S.P.R. at 173–74; *Walker*, 2015 WL 1015584. Because there is no difference material to this case between the standards she invokes from the cited Board decisions and the standards the Board applied here, as we have

already discussed, the cited Board decisions do not help Ms. Nance.

### III

We have considered Ms. Nance's other arguments and find them unpersuasive. We affirm the Board's decision.

The parties shall bear their own costs.

**AFFIRMED**