NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GUADALUPE CASAREZ,**
*Petitioner*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent*

---

2024-2125

---

Petition for review of the Merit Systems Protection Board in No. SF-0845-19-0563-I-1.

---

Decided: April 14, 2025

---

GUADALUPE CASAREZ, Downey, CA, pro se.

BRENDAN DAVID JORDAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY.

---

Before LOURIE, CHEN, and HUGHES, *Circuit Judges*.

PER CURIAM.

Guadalupe Casarez petitions for review of a final decision of the Merit Systems Protection Board ("the Board"), which denied Casarez's petition and upheld the United States Office of Personnel Management's ("OPM") findings regarding its entitlement to collect an overpayment of Casarez's Federal Employees' Retirement System ("FERS") disability retirement annuity benefits. *Casarez v. OPM*, No. SF-0845-19-0563-I-1, 2024 WL 2815347 (M.S.P.B. May 31, 2024) ("*Final Decision*"); *Casarez v. Off. of Pers. Mgmt.*, No. SF-0845-19-0563-I-1, 2019 WL 4923761 (M.S.P.B. Oct. 1, 2019) ("*Initial Decision*"), R.A. 15–32.[1]  For the following reasons, we affirm.

## BACKGROUND

Casarez was an employee of the United States Postal Service ("USPS").  She applied for disability retirement under FERS on May 29, 2015.  R.A. 49–51.  Just over a year later, on June 13, 2016, OPM notified Casarez that her application had been approved.  R.A. 133–35.  OPM's approval letter explained that "[b]ecause the FERS disability benefit must be reduced by 100 percent of any Social Security benefit payable for 12 months, Social Security checks should not be negotiated until the FERS benefit has been reduced" and that the "social security checks will be needed to pay OPM for the reduction which should have been made in the FERS annuity."  R.A. 134 (emphasis omitted).

OPM sent Casarez a similar letter on November 7, 2016.  This letter explained that "[i]f you are overpaid FERS disability benefits because of receipt of Social Security disability benefits, OPM will send you a notice of the

---

[1]    "R.A." refers to the appendix filed with Respondent's brief.

amount of overpayment" and that Casarez was "legally required to repay this money to OPM." R.A. 137. Particularly relevant to here, the letter instructed that if the United States Social Security Administration ("SSA") "sends you a retroactive payment, *hold that award* until you receive a notice of the amount of your overpayment from OPM, so that you have sufficient funds to repay your duplicate payment." *Id.* (emphasis added).

On March 12, 2018, almost two years after Casarez's FERS application was approved, Casarez received a letter from SSA informing her that she was entitled to monthly SSA disability benefits retroactive to August 2014. R.A. 56. About two weeks later, on March 28th, OPM, as it explained would happen in its earlier letters, notified Casarez regarding her overpayment in FERS annuity benefits in light of her incoming, retroactive Social Security benefits. R.A. 124. The letter acknowledged that Casarez was entitled to Social Security benefits effective August 1, 2014, and that such benefits would result in a FERS overpayment by OPM. *Id.* Consistent with earlier letters, it also informed Casarez that OPM was "required to reduce your FERS disability benefit by the amount of the benefit you are entitled to from the [SSA]." *Id.* The letter's accompanying enclosures provided more details, specifying the total overpayment amount to be collected ($61,531), the first installment date (June 1, 2018), the number of installments (108), and the amount per installment ($570.12 for the first 107 installments and $528.16 for the final installment). R.A. 125.

Casarez filed a timely request for reconsideration on April 4, 2018, which challenged the existence and amount of the overpayment, argued for waiver of overpayment recollection, and, as an alternative to waiver, requested lower monthly repayment installments. R.A. 122. The record contains no evidence that Casarez provided additional details or arguments to substantiate or support her reconsideration request. R.A. 123. OPM then issued a series of

decisions—an initial reconsideration decision rejecting Casarez's arguments, a recission of that decision, and finally a new reconsideration decision again finding that OPM had overpaid Casarez $61,531 as a result of her retroactive SSA benefits, and that Casarez was not entitled to a waiver because she should have known to set aside the retroactive SSA payment to pay OPM back. *Initial Decision*, R.A. 17–18; R.A. 108–11. Casarez then filed a petition for review of OPM's final decision with the Board, challenging the amount of overpayment and arguing for a waiver of overpayment. R.A. 261–262. An administrative judge of the Board affirmed OPM's determinations in an *Initial Decision*, which the Board then affirmed with modifications as its *Final Decision*. *See Final Decision*, at \*1.

Casarez timely petitioned for review in this court, and we have jurisdiction under 5 U.S.C. § 7703(b)(1) and 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Casarez argues that the Board's determinations were not supported by substantial evidence. Specifically, Casarez challenges the Board's findings regarding OPM's overpayment calculation as well as the Board's findings regarding OPM's waiver decision, including that OPM's collection of its overpayment is not against equity and good conscience. If the Board's waiver determination is upheld, Casarez alternatively challenges the Board's findings regarding OPM's determination that she had not shown sufficient evidence of financial hardship to justify a reduction of her monthly repayment installment amounts.

Under 5 U.S.C. § 7703(c), we may only set aside an action of the Board if it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *McIntosh v. Dep't of Def.*, 53 F.4th 630, 638 (Fed. Cir. 2022) (citation omitted). Moreover,

"[w]e review the Board's legal decisions de novo and its findings of fact for substantial evidence." *Id.* In doing so, we also construe Casarez's papers, as a pro se litigant, liberally. *Erickson v. Pardus*, 551 U.S. 89, 94, (2007) (per curiam).

The computation of a FERS disability annuity is governed by 5 U.S.C. § 8452. A FERS disability annuity must be reduced by any Social Security disability benefits a FERS retiree receives. 5 U.S.C. § 8452(a)(2); 5 C.F.R. § 844.302(b)(2), (c)(2). OPM is required to prove by a preponderance of the evidence the existence and amount of a FERS disability annuity overpayment. 5 C.F.R. § 845.307(a).

Casarez first argues that OPM's calculated overpayment amount is incorrect and should be reduced because (1) the SSA benefit was reduced by workers' compensation benefits that she never received, and (2) OPM improperly withheld the cost of her health insurance premiums from her FERS annuity. Casarez Br. 2–4. The Board, in view of SSA's retroactive Social Security benefits, found that OPM correctly determined that it had overpaid Casarez by $61,531. *Final Decision*, at *1–3; R.A. 129 (overpayment calculations).

The Board's findings regarding the amount of overpayment were supported by substantial evidence. As the Board found, Casarez was entitled to $2,132 in full monthly SSA benefits, and OPM's calculations show that her monthly FERS benefits were reduced by that amount during the relevant time period. *See* R.A. 129 (the difference between the FERS "Old Rate" ($3,990) and the FERS "New Rate" ($1,858) is equal to her full SSA monthly benefit ($2,132)). While Casarez was entitled to workers' compensation during part of the relevant period, any offset of Casarez's Social Security benefits by SSA for her workers' compensation benefits is not relevant to the FERS overpayment calculation under 5 U.S.C. § 8452. *See Leighton v.*

*OPM*, 529 F.3d 1071, 1073 (Fed. Cir. 2008) (per curiam) ("We conclude that the [B]oard correctly affirmed OPM's decision to calculate [retiree's] FERS disability retirement annuity [under 5 U.S.C. § 8452] based upon the SSA benefits to which he was entitled before any adjustments for [workers'] compensation.").

OPM was also not required to consider any deductions for health insurance premiums for purposes of determining Casarez's FERS annuity overpayment amount. FERS disability annuity amounts are based on a person's "average pay," 5 U.S.C. § 8452(a)(1)(A), which in turn is based on the person's "basic pay," 5 U.S.C. § 8401(3). "Basic pay" is an employee's annual salary as fixed by applicable law or regulation for a position, and it excludes supplemental types of pay (*e.g.*, bonuses, allowances, and overtime pay). *See* 5 U.S.C. § 8331(3). As the Board further explained, OPM applies "gross" pay rates to FERS overpayment calculations, which necessarily excludes any deductions, including for healthcare insurance premiums paid by the retiree. *Final Decision*, at *3. OPM's FERS overpayment calculation thus excludes both supplemental pay and any deductions, and substantial evidence therefore supports the Board's findings as to the amount of OPM's overpayment.

Casarez next challenges the Board's no-waiver determination. Repayment of FERS overpayments may be waived when, in OPM's judgment, the individual "is without fault and recovery would be against equity and good conscience." 5 U.S.C. § 8470(b); 5 C.F.R. § 845.301 *et seq.*; Ret. & Ins. Serv., U.S. OPM, *Policy Guidelines on the Disposition of Overpayments under the Civil Service*

*Retirement System and the Federal Employees' Retirement System* (1995)[2] ("*Policy Guidelines*").

While it is undisputed that Casarez was without fault, the Board found that recovery was not against equity and good conscience, applying the *Policy Guidelines*' "Set-Aside Rule." *Final Decision*, at \*4 (affirming *Initial Decision* at R.A. 22–23). Under the Set-Aside Rule, "if [the] individual suspected or knew that he or she had received an overpayment (and therefore had an obligation to set aside the overpaid funds), the individual is not eligible for a waiver under the 'equity and good conscience' standard and would be entitled to relief only under the more exacting 'exceptional circumstances' standard." *Boyd v. OPM*, 851 F.3d 1309, 1313–14 (Fed. Cir. 2017). Notably, "[w]hat matters is not what [Casarez] was 'instructed' to do, but whether she adverted to and understood that instruction." *Id.* at 1315 n.3. That is because "[t]hose individuals [that] do not know that the money does not belong to them . . . may act in good faith when they fail to set aside the overpayments." *Id.* at 1315; *see Policy Guidelines*, § I.C.4.

The Board found that "[Casarez] was certainly aware when she received the [SSA] retroactive payment [that] she was required to set that payment aside to repay the agency" based on OPM's November 2016 and March 2018 letters, which Casarez had received before she received her retroactive payment from SSA in June 2018. *Initial Decision*, R.A. 23 (affirmed by *Final Decision*, at \*4). The Board also found that Casarez's alleged financial hardships did "not describe exceptional circumstances." *Final Decision*, at \*4.

---

[2]    OPM's published policy guidelines interpreting its regulations regarding its Civil Service and Federal Employee's Retirement Systems.

The Board's finding that Casarez was on notice of her repayment obligation and to set aside the Social Security payment in June 2018 was supported by substantial evidence. The record indicates that Casarez received at least three letters from OPM that, together, effectively placed her on notice of her set aside obligation. First, OPM's June 2016 letter explained that "the FERS disability benefit must be reduced by 100 percent of any Social Security benefit payable for 12 months" and that "[t]he social security checks will be needed to pay OPM for the reduction." R.A. 134 (emphasis omitted). Second, OPM's November 2016 letter instructed that "[i]f SSA sends you a retroactive payment, *hold that award* until you receive a notice of the amount of your overpayment from *OPM*, so that you have sufficient funds to repay your duplicate payment." R.A. 137 (emphasis added). Third, OPM's March 2018 letter and its enclosures stated OPM's overpayment amount and explained that OPM would recover the resulting overpayment by reducing her monthly FERS annuity moving forward. R.A. 124–25. Although the Board relies on OPM letters spaced years apart, substantial evidence nonetheless supports its finding that Casarez should have known that she was required to set aside the incoming retroactive Social Security payment. It was therefore reasonable for the Board to conclude that Casarez was on notice of her set-aside obligation and that her financial hardships do not constitute exceptional circumstances, and thus OPM's collection of overpayment was not against equity and good conscience.

Casarez does not argue that she did not receive those letters or that she misunderstood any specific aspects of the letters. She does however argue more generally that the timing and nature of SSA's retroactive payment paired with OPM's various letters spanning several years led to uncertainty regarding her set aside obligation. Specifically, she asserts that OPM's March 2018 letter stated that her FERS benefits would be reduced but she had yet to

actually receive any Social Security payments until months later in June 2018. Casarez Br. 3. In other words, at the time of receiving the March 28th letter, she argues that it was unclear what she was to set aside since she had not received any SSA benefits yet. She also contends that OPM caused more confusion because, after she had requested reconsideration in April 2018, OPM issued a series of conflicting decisions. R.A. 46. On January 15, 2019, OPM issued a final decision rejecting Casarez's reconsideration arguments. *Initial Decision*, R.A. 18. But then, after Casarez appealed, the agency rescinded that decision. *Id.* Some months later in June 2019, OPM issued a new reconsideration decision, again rejecting Casarez's reconsideration request. *Id.*

We sympathize with Casarez's situation. But the scope of our review is limited. As explained above, the Board's finding that Casarez should have known to set aside any Social Security payment that she received—whether in the past or in the future—was supported by substantial evidence. Accordingly, the Board's determination that OPM's collection of its overpayment was not against equity and good conscience was reasonable.

Finally, we turn to Casarez's argument that she is entitled to an adjustment in the recovery schedule prescribed by OPM. Even where an individual is ineligible for waiver of overpayment, she may still be entitled to an adjustment in the recovery schedule if she shows that it would cause financial hardship to make payments at the rate scheduled by the agency. 5 C.F.R. § 845.301. In its *Final Decision*, the Board found that the record reflected that Casarez had requested lower installments ($100 instead of $570.12) and that she raised that issue before the administrative judge. *Final Decision*, at \*4; R.A. 122. But the Board reasoned that because Casarez failed to provide her income, liquid assets, ordinary and necessary expenses, and other circumstances that would explain how difficult it would be to make such payments, she did not establish financial

hardship and therefore OPM could not reduce her monthly installment amount. *Id.*

The Board's finding concerning Casarez's request for an adjusted monthly repayment amount is supported by substantial evidence. Casarez requested lower installments, R.A. 122, but did not provide a responsive Financial Resources Questionnaire or any statement indicating her financial circumstances, R.A. 123. Casarez therefore failed to show that she needs substantially all of her current income to meet her current ordinary and necessary living expenses and liabilities. Without such information, OPM was not obligated to adjust her FERS repayment amount accordingly.

## CONCLUSION

We have considered Casarez's remaining arguments but find them unpersuasive. For the foregoing reasons, the Board's final decision is *affirmed*.

## **AFFIRMED**

### COSTS

No costs.