NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**AMY GAVIN,**
*Petitioner*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent*

---

2024-2182

---

Petition for review of the Merit Systems Protection Board in No. AT-0845-20-0812-I-1.

---

Decided:  June 5, 2025

---

AMY GAVIN, Warner Robins, GA, pro se.

DANIEL FALKNOR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by BRIAN M. BOYNTON, ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY.

---

Before MOORE, *Chief Judge*, PROST, *Circuit Judge*, and HALL, *District Judge*.[1]

PER CURIAM.

Amy Gavin petitions from a final decision of the Merit Systems Protection Board ("Board") affirming the Office of Personnel Management's ("OPM") decision denying her request for waiver from repayment of a Federal Employees' Retirement System ("FERS") benefit overpayment. *Gavin v. OPM*, No. AT-0845-20-0812-I-1, 2024 WL 2956786, at *1 (M.S.P.B. June 11, 2024) (adopting the initial decision, *Gavin v. OPM*, No. AT-0845-20-0812-I-1, 2020 MSPB LEXIS 4360 (M.S.P.B. Oct. 30, 2020) ("*Decision*"), as the Board's final decision). For the reasons set forth below, we affirm.

## BACKGROUND

Ms. Gavin, a former employee of the United States Air Force, applied for FERS disability retirement benefits in August 2014. S.A. 22–23, 42.[2] OPM granted her application and informed her in a January 2015 letter that she must apply for Social Security disability benefits. S.A. 47. OPM explained that if the Social Security Administration ("SSA") "awards you monthly benefits, you must immediately notify [OPM] of the amount and the effective date of the monthly benefit." S.A. 47. The letter informed Ms. Gavin that "[b]ecause the FERS disability benefit must be reduced by 100 percent of any Social Security benefit payable for 12 months, Social Security checks

---

[1]    Honorable Jennifer L. Hall, District Judge, United States District Court for the District of Delaware, sitting by designation.

[2]    "S.A." refers to the supplemental appendix included with the government's informal brief.

should not be negotiated until the FERS benefit has been reduced." S.A. 48. OPM further stated that the "Social Security checks will be needed to pay OPM for the reduction which should have been made in the FERS annuity." S.A. 48. In April 2015, OPM sent Ms. Gavin a second letter explaining that "[i]f you are overpaid FERS disability benefits because of receipt of Social Security disability benefits, OPM will send you a notice of the amount of overpayment," and "[y]ou are legally required to repay this money to OPM." S.A. 50. OPM instructed Ms. Gavin that "[i]f SSA sends you a retroactive payment, hold that award until you receive a notice of the amount of your overpayment from OPM, so that you have sufficient funds to repay your duplicate payment." S.A. 50.

On February 24, 2017, the SSA approved Ms. Gavin for Social Security benefits. S.A. 31. About two months later, on April 12, 2017, OPM sent a letter to Ms. Gavin notifying her that it learned of her entitlement to Social Security benefits and adjusted her FERS benefits accordingly. S.A. 32. OPM informed her that she had been overpaid in FERS benefits for the period October 2014 through March 2017, in light of her retroactive Social Security benefits. S.A. 32. The letter also informed her that OPM would "recover the overpayment in monthly installments" from her FERS annuity. S.A. 32. The letter's accompanying enclosures provided additional details, including specifying the total overpayment amount to be collected ($52,186), the first installment date (July 1, 2017), and the amount per installment (ninety installments of $577.62 and a final installment of $200.20). S.A. 33.

On April 15, 2017, Ms. Gavin requested waiver of OPM's recovery of the overpayment arguing that she had not yet received any payment from SSA and thus had no repayment due to OPM. S.A. 37–40. She further argued that repayment would create a financial burden and hardship. S.A. 39. Because Ms. Gavin requested a waiv-

er, OPM stopped the collection of the overpayment it had started and refunded to Ms. Gavin's account the amount it already collected. *Decision*, 2020 MSPB LEXIS 4360, at *3. In May 2017, Ms. Gavin received $67,610.40 from SSA for retroactive payments through April 2017. S.A. 41. The record does not reflect that she notified OPM. *Decision*, 2020 MSPB LEXIS 4360, at *3. Three years later, in August 2020, OPM denied Ms. Gavin's waiver request. S.A. 42.

In September 2020, Ms. Gavin appealed OPM's decision denying her waiver request to the Board. *Decision*, 2020 MSPB LEXIS 4360, at *1. She argued that "it was reasonable for her to assume the waiver had been granted" because OPM stopped collection of the overpayment and took three years to respond to her waiver request. *Id.* at *3–4. She did not dispute "the existence or the amount of the overpayment." *Id.* at *3. She stated that she spent the money on income taxes and medical bills. *Id.* at *3–4.

On October 30, 2020, the administrative judge ("AJ") upheld OPM's decision. *Id.* at *8. The AJ noted that "it is undisputed that [Ms. Gavin] is without fault in causing the overpayment." *Id.* at *5. The AJ found that even though Ms. Gavin was without fault, "when [she] actually received the $67,610 lump sum in May of 2017, she knew that OPM considered $52,186 of it to be an overpayment." *Id.* As a result, the AJ found that OPM's set-aside rule applied—Ms. Gavin knew or should have known that the payment was erroneous and was expected to set aside the money—and any waiver of repayment depended on a showing of exceptional circumstances. *Id.* at *5–6. The AJ found that, under OPM's policy guidelines, OPM's failure to respond within four years would constitute an egregious delay but in Ms. Gavin's case OPM responded in less than four years. *Id.* at *6. The AJ also found that while a delay of less than four years does not absolutely preclude a waiver, the circumstances in Ms. Gavin's case were not exceptional circumstances because "OPM

promptly notified [her] of the overpayment" and she made no inquiries "during the period of delay." *Id.* at \*6–7. The AJ further noted that financial hardship is not an exceptional circumstance under the set-aside rule; therefore, Ms. Gavin's tax burden and increased medical bills do not constitute exceptional circumstances. *Id.* at \*7. The AJ, thus, found that no exceptional circumstances exist to grant a waiver. *Id.* The AJ also found no basis to conclude that Ms. Gavin is entitled to an adjustment of the recovery schedule because Ms. Gavin failed to complete and submit a Financial Resources Questionnaire. *Id.* at \*8. On June 11, 2024, the Board denied Ms. Gavin's petition for review of the AJ's decision and adopted the decision as its final decision. *Gavin*, 2024 WL 2956786, at \*1.

Ms. Gavin timely petitioned to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

The scope of our review of the Board's decision is limited. We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). The petitioner bears the burden of establishing reversible error in the Board's final decision. *Sistek v. Dep't of Veterans Affs.*, 955 F.3d 948, 953 (Fed. Cir. 2020). We review the Board's legal decisions de novo and its findings of fact for substantial evidence support. *McIntosh v. Dep't of Def.*, 53 F.4th 630, 638 (Fed. Cir. 2022).

Repayment of FERS overpayments may be waived when, in OPM's judgment, the individual "is without fault and recovery would be against equity and good conscience." 5 U.S.C. § 8346(b). Under OPM's policy guidelines' set-aside rule, "if [an individual deemed without

fault] suspected or knew that he or she had received an overpayment (and therefore had an obligation to set aside the overpaid funds), the individual is not eligible for a waiver under the 'equity and good conscience' standard and would be entitled to relief only under the more exacting 'exceptional circumstances' standard." *Boyd v. OPM*, 851 F.3d 1309, 1313–14 (Fed. Cir. 2017). The set-aside rule states:

> Individuals who are aware that they are receiving overpayments are obligated by the principles of equity and good conscience to set aside the amount overpaid pending recoupment by OPM. Thus, *an individual who accepted a payment which he/she suspected or knew to be erroneous but who is found without fault . . . is obliged to set the overpaid money aside pending recovery by OPM. . . . Unless there are exceptional circumstances, recovery by OPM in these cases is not against equity and good conscience.* (Note: Exceptional circumstances would involve extremely egregious errors or delays by OPM—e.g., a failure to issue a written decision within 4 years of a debtor's request for waiver. . . . Financial hardship is not an exceptional circumstance.)

*Policy Guidelines on the Disposition of Overpayments under the Civil Service Retirement System and the Federal Employees' Retirement System*, § I.C.4 (May 1995) ("*Policy Guidelines*") (emphasis added); S.A. 64.

On petition to this court, Ms. Gavin argues that she is entitled to a waiver because of OPM's three-year response time to her waiver request. Pet'r's Informal Br. 6. Ms. Gavin contends that "any reasonable person would have assumed the waiver request was granted" because OPM did not respond to her for three years "other than to return the garnished funds." *Id.* at 8. Ms. Gavin asserts that the repayment would put her in a "major financial

bind" and that she has "continual unforeseen" bills due to her health problems. *Id.* at 16–17. Ms. Gavin further argues that the overpayment amount is "inaccurate and over inflated" because it did not incorporate "multiple tax implications" and "deductions for life insurance and health insurance." *Id.* at 6–7.

We discern no error in the Board's determination that Ms. Gavin was not entitled to a waiver of the obligation to repay the overpayment. First, while it is undisputed that Ms. Gavin was without fault, the Board properly determined that the set-aside rule applied because it found that Ms. Gavin "accepted a payment that she knew or should have known to be erroneous." *Decision*, 2020 MSPB LEXIS 4360, at *5. That finding is supported by substantial evidence: Ms. Gavin received three letters notifying her of the effect of receiving SSA disability benefits, with the April 2015 letter explicitly instructing her to hold any retroactive payment received from SSA "so that [she has] sufficient funds to repay [her] duplicate payment." S.A. 50.

Second, the Board's finding that Ms. Gavin identified no exceptional circumstances that would entitle her to be excused from repayment is supported by substantial evidence and in accordance with law. Ms. Gavin argues that OPM's three-year response time to her waiver request was excessive. As the Board found, however, that response time is not automatically presumed to be an exceptional circumstance because it was within four years. *See Policy Guidelines* § I.C.4 ("Exceptional circumstances would involve extremely egregious errors or delays by OPM—e.g., failure to issue a written decision within 4 years of a debtor's request for waiver."). Further, as the Board found, the circumstances in this case do not constitute extremely egregious errors or delays: OPM notified Ms. Gavin about the effect of receiving SSA benefits multiple times before she received the overpayment and Ms. Gavin made no inquiries during the three

years.  *See Decision*, 2020 MSPB LEXIS 4360, at *7. Ms. Gavin also challenges the Board's finding based on financial hardship.  But, as the Board found, "[f]inancial hardship is not an exceptional circumstance" under the set-aside rule.  *Policy Guidelines* § I.C.4.  Thus, the Board properly affirmed OPM's decision denying Ms. Gavin a waiver from recovery of the overpayment.

We need not address Ms. Gavin's argument raised for the first time to this court.  She argues that the overpayment amount would have to be decreased because of life insurance, health insurance, and tax debts.  She asserts that she "would need a lot more time to determine exactly how much" the decreased amount would be.  Pet'r's Informal Br. 18.  Ms. Gavin, however, failed to raise this argument with the Board.  *See Decision*, 2020 MSPB LEXIS 4360, at *3 (noting that Ms. Gavin "does not dispute the existence or the amount of the overpayment"). "Arguments not made in the court or tribunal whose order is under review are normally considered" forfeited.  *Gant v. United States*, 417 F.3d 1328, 1332 (Fed. Cir. 2005). Further, the Board found that it had no basis on which to conclude that Ms. Gavin "is entitled to an adjustment of the recovery schedule" because she failed to complete and submit a Financial Resources Questionnaire.  *See Decision*, 2020 MSPB LEXIS 4360, at *8.

## CONCLUSION

We have considered Ms. Gavin's remaining arguments and find them unpersuasive.  For the foregoing reasons, we affirm.

## **AFFIRMED**

### COSTS

No costs.